No. 18,439.

ELEANOR C. IRWIN *v.* WILLIAM HEDGES ROBINSON, JR.
(355 P. [2d] 108)

Decided June 13, 1960.   September 26, 1960, opinion modified
and rehearing denied.

Messrs. WAGNER & WYERS, for plaintiff in error.

Mr. WILLIAM HEDGES ROBINSON, JR., pro se.

Mr. KENNETH W. ROBINSON, Mr. ROBERT D. CHARLTON, Mr. RICHARD L. SCHREPFERMAN, of counsel for defendant in error.

*In Department.*

Opinion by Mr. Justice Hall.

Irwin is here by writ of error seeking reversal of:
"FINDINGS AND JUDGMENT ON OBJECTIONS OF ELEANOR C. IRWIN TO EXECUTOR'S PRELIMINARY FINAL REPORT AND ON MOTION FOR SURCHARGE OF THE EXECUTOR" which findings and judgment were made and entered by Hon. H. O. Ashton, acting judge of the County Court of the City and County of Denver, in case No. P-2862 entitled:
"IN THE MATTER OF THE ESTATE OF C. W. BLANPIED, DECEASED."
To have obtained a writ of error and filed briefs under the caption: "Irwin, Plaintiff in Error, v. Robinson, Defendant in Error," is clearly without authority and misleading. So far as the record discloses there never was a case of Irwin v. Robinson, and if there was it is certainly not contained in the record before us.
■ Irwin appeared in the court below as a person having and presenting a claim in The Matter of the Estate of Blanpied, and as such claimant she objected to certain acts of Robinson, the executor; the trial court passed on those objections and Irwin, being dissatisfied with the rulings of the trial court, seeks review here and erroneously seeks to make it a personal action between Irwin and Robinson — that she cannot do. It remains an estate matter, and Robinson must answer not to Irwin personally, but as executor to the estate. Any surcharge against Robinson will necessarily be for the use of Blanpied's heirs, legatees, devisees and creditors as their respective rights may be established in the matter of the estate. If Irwin wishes to assert rights that she may have against Robinson, it will have to be in a separate suit.
We refer to claimant as Irwin, and to the executor as Robinson.

The trial judge surcharged Robinson in the total amount of $1540.00, directed Robinson to pay that amount to the estate, and denied Irwin's prayer for judgment against Robinson in the amount of $63,700.00.

We observe that four different judges have participated in and entered orders in the administration of this estate. The record discloses no reason for such procedure and we believe that had any one of the four handled the matter in its entirety Irwin and Robinson and the estate would not now be in their unenviable positions. Judge Ashton was the last to appear and at the time he first appeared the matter was in a state of utter confusion due to the failure of Robinson to properly perform his duties. Not only did judges come and go, but interested parties changed lawyers and thus the confusion has been compounded.

In addition, present counsel for Irwin have, throughout the hearings in which they appeared before the trial judge and before this court, taken the untenable position that Robinson is answerable for the amount shown on the inventory as the value of the various items of estate property listed thereon, and this irrespective of the actual value thereof or the amount realized therefrom. In substance, counsel says that Robinson is estopped from contending that the property was worth less and brought less than the amounts set opposite the several items inventoried. As a result of this erroneous view of the law, Irwin, knowing that the inventory listed assets with values set opposite each item, the total of which was far in excess of the amount necessary to satisfy all claims, did not explore to the fullest extent the propriety of Robinson's actions nor the classification of Irwin's claim and that of Keith Talley, Inc.

The trial court properly held that:

"The executor, under the statute, in retaining, selling and managing property for the benefit of others, is required to have in mind the responsibilities which are at-

tached to such office, the size, nature and needs of the estate entrusted to him and to exercise the judgment and care under the circumstances then prevailing which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. However, the executor is not an insurer, nor is he chargeable with loss or depreciation of assets where he acted in good faith, with due prudence and diligence in the management of the estate."

After a careful study of the record before us we conclude that the judgment should be reversed and set aside. To permit this judgment to stand would result in gross injustices to creditors of the estate and sanction acts of omission and commision by Robinson that have not and cannot be condoned or justified, legally, or at all.

From the record before us it appears that one Charles W. Blanpied, a resident of Denver, Colorado, died on January 27, 1955, leaving a last Will (prepared by Robinson), admitted to probate February 14, 1955, which nominated, constituted and appointed Robinson as executor thereof, he to serve without bond. The Will granted to the executor very broad powers to be exercised in the administration of the estate, culminating in the following provision:

"(h) To exercise such power and authority and grant of powers without first obtaining the authority or permission of any court of probate and without requiring that such instruments and acts of his be approved and without the necessity of posting a bond for any of the aforesaid transactions."

On February 14, 1955, the court appointed Robinson executor and on that date he qualified as such and filed executor's *personal bond, without sureties,* in the amount

of $25,000.00, whereupon letters testamentary were issued to him and pursuant to which he has since and now is serving as executor.

The executor filed intermediate reports showing individual items of receipts and disbursements. However, there is a glaring lack of information as to the source of income or reasons for disbursements. These reports are dated and cover the following periods:

| Date filed | Period covered |
|---|---|
| November 22, 1955 | Jan. 25, 1955 to Sept. 30, 1955 |
| March 29, 1956 | Oct. 1, 1955 to Dec. 31, 1955 |
| Aug. 7, 1956 | Jan. 1, 1956 to June 30, 1956 |
| Feb. 25, 1957 | July 1, 1956 to Jan. 1, 1957 |

Not until July 23, 1956, more than eighteen months after qualifying as executor, did Robinson file an inventory. In this inventory he listed various items of property and placed opposite each item an amount listed as:

"Cost, Sales Price or appraised value, whichever is higher."

These amounts total $226,304.03.

There also appears in the record before us an undated amended inventory signed by Robinson showing "value of decedent's interest $163,295.42." This document bears no court filing stamp; however, attached thereto is a slip of paper containing this bit of information (presumably attached by some employee in the office of the clerk of the County Court):

"Cashier held this inventory for correction — no date was entered as to tender for filing, however, I do know that the amended inventory was here in April.

V.G."

On September 4, 1957, a second amended inventory "which supersedes all inventories previously filed" was filed; it showed the "Total Gross Value" of the estate to be *$158,034.40*. None of the inventories was ever approved by the County Court.

Also in the record is a copy of a Certificate of Waiver

of Inheritance Tax showing the gross value of the estate to be $214,945.44, and a copy of the Estate Tax Return showing the total gross estate to have a value of *$250,953.14*.

Equally confusing is the record with reference to the claim of Irwin. Robinson had, on various occasions from 1951 until February 1956, acted as counsel for Irwin. In July of 1955 Robinson, executor of the estate and counsel for Irwin, prepared for Irwin her claim against the estate for $65,700.00, and as executor signed a statement, attached to the claim, requesting that it be allowed as a claim of *the first class*. Robinson testified that the day following preparation of this claim he left it with the court file in the court room. Happily, one year later the claim was found loose in the estate file; whereupon the court filing stamp, dated July 23, 1956, was placed thereon and a notation made thereon by the county judge as follows:

"7/23/56 late filing allowed without prejudice."

Later the trial judge found that Robinson, because of his acting as counsel for Irwin, was in no position as executor to pass on his client's claim; therefore he appointed Harold M. Webster, attorney at law, as a special executor to investigate and report on said claim. Webster completed his assigned task and recommended that the claim be allowed in the amount of $65,700.00 as a claim of the *fifth class*. On May 7, 1957, the trial judge, after a lengthy hearing, allowed the Irwin claim in the amount of $63,700.00—of which $23,500.00 was allowed as a claim of the *first class* and $40,200.00 as a claim of the *fifth class*.

The foregoing are fair illustrations of the chaotic conditions prevelant in this matter, conditions resulting from the failure of the executor to comply with plain statutory duties imposed on those administering estates.

Further complications arise out of the action of the executor: in disbursing estate funds without the necessity of the recipient filing a claim; expending funds in

settlement of claims filed but never submitted to the court for approval; expending funds in direct violation of a court order to make no such expenditures; paying fifth class claims when the estate was known to be insolvent and when it was known that estate funds were not sufficient to pay the first class claims in full; paying some first class claims in full and others not at all.

Robinson in his inventory listed as an asset of Blanpied one-half of the family home, valued at $15,000.00, standing in his name and the name of his wife as joint tenants. This property, up until five months prior to decedent's death, had stood in his name; at that time, he being insolvent, conveyed the property to himself and his wife as joint tenants. Irwin (and other claimants not parties here) contends that it was Robinson's duty to have this conveyance set aside as in fraud of creditors. Robinson was acting as attorney for Mrs. Blanpied and he testified that he knew she was a creditor of Blanpied; that he also knew she was entitled to a widow's allowance and considered it equitable and just for her to file no claim as a widow or a creditor, and to keep the home. Such an arrangement might not be open to objection if the widow was the sole beneficiary and there were no creditors. Understandably, creditors who are faced with the rather certain prospect of receiving nothing on their claims unless obtained out of this item of property look with disfavor on such short cuts to alleged equitable results.

Robinson, clothed with broad powers conferred by the Will, apparently felt that statutory duties imposed on executors have no application to one so clothed. We know of no such exemptions.

Though not designated by either party as a part of the record before us, we find inserted in the record—though not attached thereto or bound as are other papers—a certified copy of an order signed by one of the four judges who have at various times acted in this matter, which order was entered as requested in a petition filed

by counsel for Keith Talley, Inc., wherein it was requested that a claim of Talley, filed July 18, 1955, for the amount of $4,616.60 be allowed as a claim of the first class *and paid forthwith*. The petition was filed December 12, 1955; the order was entered December 12, 1955. There is nothing in the record to indicate that Robinson ever approved the claim in any amount as of any class, nor is there anything to indicate that Robinson ever had any notice of the filing of the petition or notice of any hearing thereon, if hearing was had, and yet he proceeded to pay the amount in full, well knowing that there would not be sufficient assets to pay other first class claims in full. It may seem trite to point out that C.R.S. '53, 152-12-5, provides:

"Claims * * * unless allowed by the * * * executor * * * and classified according to the contention of the claimant, shall stand for hearing upon notice to be given by the claimant, conservator, executor or administrator at any time before final settlement of said estate."

█ This order directing payment of the *claim forthwith* does not have the effect of relieving the executor of performing his duties in accordance with law, nor does it render void C.R.S. '53, 152-12-11, wherein it is provided that:

" * * * when the estate is insufficient to pay the whole of the demands, such demands in any one class shall be paid pro rata, * * *."

A cursory examination of the interim reports filed by Robinson indicates that he paid out on mortgages, for which he asks credit, sums far in excess of the amounts received upon the final disposition of the mortgaged properties.

The judgment of September 27, 1957, is reversed and the cause remanded with directions that an order be entered by the trial court allowing Irwin's claim in such amount and of such a class as the present records of the county court may dictate, and further directing Robinson, within such reasonable time as the trial court may

determine, or as extended, to prepare and file with the clerk of the court a detailed report showing:

1. Every item of real property owned by the decedent, or in which he had an interest at the time of his death (insofar as the same has come to his knowledge), and in connection with each such item a full and detailed statement showing: (Items in which decedent had only a security interest shall be listed under 2 following).

(a) rents, if any, received therefrom with dates and amounts and the names and addresses of the persons from whom received;

(b) expenditures made, and for which he seeks credit, in protecting the estate's interest in said property, including taxes, payments on mortgages, repairs, etc. — giving dates and amounts of said payments and names and addresses of payees and a statement as to whether said payments were authorized by court order or approved by court order;

(c) a full and complete statement of the final disposition of said property, when sold, the consideration received therefor, the name and address of the party to whom sold, whether sold at private or public sale, and a statement as to whether the property had been appraised and, if so, by whom, when and the valuation placed thereon by such appraisal.

2. Every note or other evidence of indebtedness, and every claim secured or unsecured, owned by or in which decedent had an interest at the time of his death, and in connection with each item a full and detailed statement of:

(a) all payments made thereon, by whom made, when made and the amount of each payment;

(b) a full and complete statement of the final disposition made of said property, when sold, the consideration received therefor, the name and address of the party to whom sold and whether sold at public or private sale.

3. Every item of personal property—other than those items set forth in 2, supra—owned by or in which decedent had an interest at the time of his death and in connection with each item a full and complete statement of:

(a) rents, if any received, therefrom — with dates, amounts and the names and addresses of the persons from whom received;

(b) expenditures made, and for which he seeks credit, in protecting the estate's interest in said property, including taxes, payments on mortgages, repairs, etc.— giving dates and amounts of said payments and names and addresses of the persons to whom said payments were made;

(c) a full and complete statement of the final disposition made of said property, when sold, the consideration, the name and address of the party to whom sold, and whether sold at public or private sale.

4. A list of all disbursements, other than those set forth in 1 and 3, supra, made by him and for which he seeks credit, setting forth the date and amount of each item, the name and address of the party to whom payment was made and for what purpose or consideration.

5. A summary of all his receipts and disbursements from the date of his appointment to the date of said report, with a statement of any amount remaining in his hands as executor.

6. A recommendation for the approval in whole or in part of the claim of Keith Talley, Inc., for $4,616.00 and the claim of Keith Talley for $1443.00, stating whether said claims are recommended for payment or nonpayment, the classification to be given thereto; said recommendation to be accompanied by detailed reasons therefor.

7. A list of all claims filed that have not been approved by the court, or withdrawn, together with his recommendations for approval or rejection and, if rejection is recommended, proof that notice of the time and

place for hearing of said claims has been served on the claimants.

8. A list of all claimed costs of administration that have not been paid, with full details of same.

That said order further direct Robinson to serve a copy of said report upon Irwin or her counsel of record and, on request, to furnish to any other claimant a copy thereof.

On filing of such report and service of a copy thereof in compliance with the provisions above set forth, the trial court shall enter an order granting to Irwin and other creditors a reasonable time to file with the clerk of the court objections to any item so reported and which objections shall set forth in detail the reasons for such objections; also to set forth affirmatively items of property, if any, which it is contended Robinson has received and not listed or accounted for; also any items of property which it is contended Robinson should have taken possession of, including such property, if any, as was conveyed by decedent in fraud of his creditors. Irwin or other objecting claimants to serve Robinson with a copy of their objections.

On the filing of such objections, the trial court shall enter an order granting Robinson a reasonable time to make written answer to the affirmative matters set forth by objectors, a copy of such answer to be served on objectors.

Thereupon the matter shall be set for hearing on the report, objections, affirmative allegations of objectors and Robinson's answer thereto, all parties to be given full opportunity to present evidence in support of their respective contentions, and at the close thereof a final judgment and decree be entered settling all matters pertaining to said estate, said decree to be subject to review by this court as provided by law and the rules of this court.

All further proceedings herein, so far as feasible, shall

be held before the same judge so that consistency and continuity will be preserved.

Mr. Justice Knauss and Mr. Justice Day concur.