No. 20219.

IN THE MATTER OF THE ESTATE OF C. W. BLANPIED,
DECEASED, *v.* WILLIAM HEDGES ROBINSON, JR.
(393 P.2d 355)

Decided June 22, 1964.

134

Messrs. WAGNER and WYERS, for plaintiff in error.

Mr. GEORGE J. ROBINSON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

C. W. BLANPIED died on January 27, 1955, leaving a last

will which was admitted to probate and William H. Robinson, Jr., was appointed executor as provided in the will. Eleanor Irwin filed a claim in the estate which was allowed as a claim of the first class. There were insufficient assets in the estate to pay her claim, and she filed objections to Robinson's conduct as executor, contending that his acts were such as to constitute waste and mismanagement, and sought to surcharge him in an amount equal to her claim of $63,700.

This writ of error marks the second time we are called upon to review the findings of the trial court with respect to Robinson's conduct. This Court in *Irwin v. Robinson,* 143 Colo. 336, 355 P.2d 108, reversed and remanded the judgment in the first case with directions to the county court to enter an order adjudging Irwin's claim in such amount and of such class as the then present records of the court dictated and further directed Robinson to prepare and file a report showing in detail the numerous transactions which he undertook on behalf of the estate and the monies received therefor and disbursed therefrom. Provision was made for both sides to present evidence in support of their respective contentions. All of this was made necessary because the entire matter was in a state of utter, hopeless confusion.

Robinson filed a report which complied with the directions of this Court and Irwin filed objections thereto. The matter was then set for hearing. The major part of the record consists of evidence introduced by Robinson at the hearing to explain and to justify his actions in some thirty rather complicated financial transactions and of extensive cross-examination thereon. At the termination of the hearing, the county court made exhaustive findings of fact and conclusions of law dealing in detail with each of the transactions objected to by Irwin and comprising sixty-three pages of the record. As a result, Robinson was surcharged in the total amount of $2,010.40. Irwin, again not satisfied with judgment of the trial court, sued out the present writ of error.

Irwin's case is predicated on the proposition that the estate became insolvent because of Robinson's waste and mismanagement. At the outset, therefore, it would be well to quote from *Irwin v. Robinson,* supra, concerning the standard by which Robinson's conduct must be judged:

"The executor, under the statute, in retaining, selling and managing property for the benefit of others, is required to have in mind the responsibilities which are attached to such office, the size, nature and needs of the estate entrusted to him and to exercise the judgment and care under the circumstances then prevailing which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. *However, the executor is not an insurer, nor is he chargeable with loss or depreciation of assets where he acted in good faith, with due prudence and diligence in the management of the estate.*" (Emphasis supplied.)

The record clearly shows that the executor here did not in many instances follow statutory requirements in administering the estate and in many cases ignored them completely. While there were broad powers granted to the executor by the will, this fact did not excuse the executor from complying with plain statutory requirements, nor did they permit him, as he frequently did, to deal with the assets of the estate as if they belonged to him and were not under the jurisdiction of the probate court.

▉▉ The only issue before us, however, is whether the executor should be surcharged with respect to the transactions objected to by the claimant. The law is clear that to surcharge an executor there must be a finding that he failed to exercise common prudence, common skill and common caution in his management of the estate, and that these failures resulted in loss to the estate

and prejudice to the persons in interest. The standard is broad and the exercise of sound business judgment in an estate so complicated by the maneuvers of the decedent in his lifetime, and whose assets were, as the trial court found, "razor thin" equities, is a matter not easily determined. Upon this issue, great weight must be accorded the carefully considered findings and conclusions of the trial judge.

As has already been indicated, the number of transactions for which Irwin would have Robinson surcharged is great and the details are quite complicated. The record consists of 1645 folios and the exhibits contained therein are numerous. It would serve no good purpose and would unduly lengthen this opinion to recite each and every item to which Irwin objects. We propose, rather, to categorize the transactions and objections as nearly as possible.

We first consider Irwin's contentions (1) that the executor should be surcharged the full amount of each of the encumbrances on the real estate owned by the decedent, because the executor sold the real estate subject to the encumbrances although no claims had been filed by the holders of the said encumberances, and (2) that the executor should be surcharged for all interest and principal paid by him without court order on the said encumbrances since no claims were filed by the holders of the encumbrances.

 In our view, C.R.S. '53, 152-12-1, et seq., provides that the holder of an encumbrance upon property of the deceased may follow one of three routes: (1) he may ignore the estate entirely and look only to his security, (2) he may file a conditional claim so that he may share in any of the assets in the event there is a deficiency, or (3) he may ignore the security and look· only to the assets of the estate. The failure to file a claim does not discharge the lien nor render it unenforceable. Since the liens here remained in full force and effect, any conveyance by the executor had to be made subject to the

encumbrance and Irwin's attempt to surcharge the amount of the lien to the executor is obviously without merit.

Irwin's contention that the executor should be surcharged for principal and interest paid on encumbrances without court order while he was endeavoring to sell the properties is equally without merit. It was the executor's duty to preserve the assets of the estate and to prevent the foreclosure of liens upon such assets by the payment of principal and interest where common prudence dictated and where such payments were in the best interests of the estate.

When the executor made such payments without prior approval of the court, he took the risk of being surcharged for such payments in the event the court later found his actions to be imprudent or improper in the circumstances. But the trial court here found that the payments made were in the best interests of the estate and were, therefore, not to be surcharged against him. It is true that it now appears that, in some instances, the estate might have benefited more had the executor not paid principal and interest and, instead, permitted foreclosure to occur. An executor is not, however, required to have such prescience that he may be surcharged if his judgment as to the best interests of the estate, exercised with due care and caution, is not borne out by future events. To hold otherwise would be to make an executor an insurer, something not contemplated under the law. *Irwin v. Robinson,* supra.

Irwin contends also that the executor must be surcharged for the difference between the values placed on the real estate on the inventory filed by the executor, and the actual prices obtained by the executor on the sales. This Court held that position untenable in *Irwin v. Robinson,* supra. The executor testified as to the efforts he made to sell the properties involved and as to the best prices he was able to get. Irwin presented no testimony as to market value and was content in this case, as she

was in the first hearing, with the assertion that the executor was estopped to contend that the market values of the properties were anything less than the values ascribed in the inventory. The trial court found in each instance that the sale was in the best interest of the estate and, in view of the record here, that finding is conclusive.

Irwin also claims that the executor should be surcharged for failing to rent vacant premises while attempting to sell them, and for failure to account for rentals on other premises. One of the parcels for which Irwin sought to surcharge rent was on vacant lots, completely undeveloped without curbing and streets, whose only potential tenants were jack rabbits. On other parcels, the executor was advised by competent real estate brokers not to rent the properties as it would hamper their sale. Suffice it to say that the trial court found no breach of duty in the manner in which the executor dealt with the rentals on the various properties in the estate.

We now turn our attention to seven properties sold by the decedent in his lifetime on contracts of sale and to which he still held legal title at the time of his death. Irwin objects to the executor's conduct in the ultimate disposition of these properties. She contends that the executor had no right to give the purchasers credit for the encumbrances which they were required to assume.

The property known as Lot 15, Block B, Leyden Townsite, Jefferson County serves to point up the factual situation underlying these transactions. The contract for this property was executed April 12, 1954, the purchasers being Ruth and Herman Dennis. The purchase price was $3,551.25 and the adjusted balance after down payment was $3,347.58. The principal balance at the time of the decedent's death was $3,053.41. Pertintent language of the contract of sale is as follows:

"WITNESSETH, That if the parties of the second part

shall first make the payments and perform the covenants herein mentioned to be made and performed by the parties of the second part, the party of the first part will thereupon convey to the parties of the second part as joint tenants and not as tenants in common the following described property * * * in fee simple by good and sufficent Warranty Deed, free and clear from all liens and encumbrances except first Trust Deed of record, balance $1025.00; and second Trust Deed of record, balance $500.00 * * *.

" * * * However, when either $500.00 shall be paid to reduction of principal at one time, or when the principal balance is reduced to $2500.00, a deed will be given and Trust Deed or Trust Deeds will be assumed by buyers or taken back by seller payable on same terms as in above agreement unless otherwise mutually agreed; * * *"

Robinson made payments on the deeds of trust amounting to $288.00 and collected payments from the Dennises amounting to $1185.00, whereupon he conveyed the property to the Dennises, they assuming the balance on the encumbrances totaling $2032.39. Irwin interposes the following objection to this transaction:

"Under the terms of this contract, the original sale price of $3,551.25, which had been reduced to $3,053.41 at the time of Blanpied's death, was for Blanpied's equity. He agreed to convey his title excepting the first and second trust deeds. In his inventory, Mr. Robinson did not set forth any lien against this property. He should have recovered for the estate a principal balance of $3,053.41, plus interest on the unpaid balance from the date of death to July 27, 1956, amounting to $243.61, or a total of $3,297.02. He collected only $1,185.00 and the estate suffered a loss of $2,112.02."

On this transaction and on similar transactions, Robinson made payments on the existing encumbrances while collecting installments before conveyance to the purchasers and upon conveyance the purchasers were given credit for the balance of the encumbrances and they as-

sumed the same. The contracts themselves are ambiguous on this point and we find ourselves in agreement with the county court that the course which Robinson took was the only realistic course under the circumstances and that these contracts cannot be so construed as to evince an intent on the part of the contracting parties that to the purchase price should be added the amount of the existing encumbrances.

 The next objection deserving of attention questions Robinson's conduct with respect to 4567 West 38th Avenue, the decedent's family home, and the household goods contained therein.

First, with respect to the real property, Irwin contends that the decedent gratuitously transferred the same from himself to himself and his wife as joint tenants on August 12, 1954, and that Robinson failed in his duty to recover this asset for the estate. Irwin would surcharge Robinson $6,216.97 on this item.

The record discloses that the decedent and his wife had been married for some thirty years and that throughout the marriage the wife had been gainfully employed. They shared a joint bank account to which the wife contributed her earnings. They lived in various homes in Denver and with each move to a new residence the property was acquired in joint tenancy. This chain of holdings in joint tenancy is unbroken up to 1953, when the residence at 4567 West 38th Avenue was acquired by the decedent in fee simple by a deed under which two other pieces of real estate were also conveyed to him. As recited above, the conveyance from the decedent to himself and his wife as joint tenants occurred on August 12, 1954. Prior to that time, on January 21, 1953, and subsequent to that time, on August 21, 1954, on statements given to The North Denver Bank and to Denver Federal Savings and Loan Company, the decedent described himself as the sole owner of this property. On September 15, 1954, the decedent gave to Irwin a second trust deed

on this property and warranted that he was the sole fee owner, subject only to a first trust deed of record.

At the hearing, the decedent's wife was called to the stand to testify with respect to this property. The county court's findings contain an adequate resume of her testimony and the court's conclusions with respect to Irwin's contention that the executor should have brought an action to recover this property are worthy of quoting here:

" * * * Mrs. Blanpied testified that she * * * participated in the loan from the Silver State Savings and Loan Association in the sum of $12,000, and that she joined with her husband in signing the necessary papers, which bore her name as well as his, and that she has always kept a copy of the closing statement in her possession, Exhibit O. Mrs. Blanpied identified Exhibit N, the joint tenancy deed from Mr. Blanpied and to Blanpied and herself as joint tenants, dated August 12, 1954, as bearing the signature of the decedent. She testified that she didn't see the instrument, Exhibit N, until about one year after the death of the decedent. She further testified 'I always assumed that there was such a document.' She identified a passbook of the Silver State Savings & Loan Association which she said was her record of payments, and had always been in her possession. Payments on the house, she testified, were made from the joint account in the Denver National Bank. This account, she testified, was not used for business purposes, but just the family. The business account, she testified, was at the United States National Bank. She further testified that she didn't know of the decedent's financial condition, nor was she acquainted with the Irwin obligation. She further testified that she didn't know of some 13 specific obligations of the decedent. There is no dispute concerning the chain of ownership of various homes in which the decedent and his wife lived during their married life, nor is there any dispute concerning the earnings of Mrs. Blanpied, the existence of the joint tenancy ac-

count, the use of that account, and the deposit of Mrs. Blanpied's earnings. * * * On the basis of the testimony presented, which has been briefly reviewed, the court finds that Mary Blanpied not only had color of title as a joint tenant, but was a bona fide purchaser for value of the premises referred to, and that it would have been a needless expense on the estate to litigate the question of ownership. The court finds that this was not a gratuitous conveyance, but that payments on account of the purchase thereof and in the liquidation of the loan had been made from joint-tenancy funds, and that the interest of Mrs. Blanpied was accumulated during the many years of her married life while she was gainfully employed. The court further finds that the fiduciary acted in the best interest of the estate and acted consistent with the facts in refraining to question, through the courts, the ownership of the joint-tenancy property, which became the absolute property of Mrs. Blanpied upon the death of the decedent in this case. Accordingly, the objection is overruled, and the claim for surcharge will be denied."

The issue here is the reasonableness of Robinson's conduct in acting as he did on the facts as they existed. Robinson's liability cannot be predicated solely upon isolated statements which are subsequently discovered to have been made by the decedent to money lenders for purposes of his own. We cannot say as a matter of law that Robinson acted with impropriety in not bringing an action to set aside the conveyance to the wife, considering the record of previous ownerships of the decedent and his wife in joint tenancy, the wife's contributions from her employment to the joint bank account, and her participation in the loan.

The county court determined that Robinson should be surcharged in an amount equal to fifty per cent of the value of the household goods on the date of the decedent's death, January 27, 1955. Irwin contends that the decedent was the sole owner of these goods and

also contends that the county court erred in its method of appraisal.

In Colorado, the rule is that personal property in the joint possession of husband and wife, or concerning which there is no independent evidence as to which of them is in possession, is presumed to belong to the husband. *Smith v. Greenburg,* 121 Colo. 417, 218 P.2d 514. This presumption is, of course, not conclusive, and the record discloses that some of the items in the family home were purchased by the wife. Irwin's sole contention on this point is that because the decedent represented that he alone owned the household goods on various financial statements, the county court erred in holding that the wife had overcome the presumption of ownership to the extent of fifty per cent. We fail to see how Irwin can escape the familiar rule that this Court is bound by the findings of fact of a trial court where there is competent evidence in the record to support those findings. Here, there was conflicting evidence as to ownership and, although no evidence was presented to establish with mathematical precision the exact amount contributed by the wife, we cannot hold as a matter of law that the county court's findings are erroneous.

In regard to the method of appraisal, after the hearing on August 2, 1961, the county court, pursuant to C.R.S. '53, 152-8-1, appointed one Bernard Hambly to appraise the household goods as of the date of the decedent's death — January 27, 1955. The difficulties inherent in such an undertaking are obvious.

Hambly appraised the household goods at $1,798.00. Robinson's inventory reflected a value of $3000.00, but this valuation was not made upon the appraisement of anyone appointed by the court. The court found the value of the household goods to be $2,399.00 — the mean value between the two figures presented, and surcharged Robinson fifty per cent of that amount, or $1,199.50.

In her brief, Irwin raises the same objections as she did in the county court. These objections are directed to

Hambly's appraisal *and not to the mathematics employed by the county court after that appraisal was considered by the court.* We shall take Irwin as we find her, on the strength of only the objections she has raised. The only authority cited in Irwin's brief for the proposition that Hambly's appraisement was not admissible is *Bournakis v. Bournakis,* 146 Colo. 358, 361 P.2d 438. *Bournakis* manifestly does not support this proposition. That case was concerned with a property settlement in a divorce action wherein the trial court precluded the wife from offering evidence to contradict the valuation placed upon the property by a court appointed appraiser. The effect of this was to impart "infallibility" to the appraiser's values. This Court remanded for further hearing so that rebuttal, cross examination and other tests could be made to attack the credibility of the appraiser and determine the weight to be given to his testimony.

In the instant case, the county court gave Irwin the opportunity to submit whatever evidence she wished as to the value of the household goods. She relied upon the $3,000.00 figure which Robinson had placed upon the property and chose to introduce no further evidence. The county court here gave Irwin the benefit of the doubt and surcharged Robinson in an amount in excess of what the charge would have been had the court adhered to the value placed upon the household goods by the appointed appraiser. In such circumstances, Irwin cannot be heard to complain.

The final issue to be resolved is Irwin's contention that Robinson is estopped to assert that the estate was insolvent and insufficient to pay her claim since he made certain assurances to her during the course of his administration that her claim would be paid in full, and had, in fact, made some payments to her. Irwin asserts that in reliance upon these assurances, she purchased a home in Lexington, Massachusetts, and assumed liability for a substantial mortgage to finance it. In our view, no

such estoppel arose against Robinson in his capacity as executor.

Irwin's claim in the estate arose from an obligation of the decedent, not the executor. The matter before us arises on Irwin's objection to Robinson's conduct in managing the estate and her request that the court surcharge him for losses to the estate which she claims were incurred by reason of this mismanagement. It cannot be turned into an action between Irwin and Robinson for some obligation which he may have individually incurred to her.

There are several other items to which Irwin objected for which the trial court refused to surcharge the executor. Suffice it to say that the trial court's actions in these matters find support in the evidence, and we refuse to disturb them.

This record discloses several instances where Robinson did not act in the best interests of the estate, instances where he breached his fiduciary duty, and for these transgressions he has been surcharged.

The judgment is in all respects affirmed.

Mr. Chief Justice McWilliams and Mr. Justice Day concur.