472 P.2d 690 (1970)
John H. LATTA, Plaintiff in Error,
v.
Trine L. HENRY, Defendant in Error.
No. 70-084. (Supreme Court No. 22823.)
Colorado Court of Appeals, Div. II.
May 5, 1970.
Rehearing Denied May 21, 1970.
*691 Johnson & McLachlan, Harlan Johnson, Lamar, for plaintiff in error.
Schmidt & Schmidt, Howard M. Schmidt, Springfield, for defendant in error.
Selected for Official Publication.
DUFFORD, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and was subsequently transferred to the Court of Appeals under the authority vested in the Supreme Court.
This action involves the final accounting of the personal representative of the Estate of Jennie H. Latta. The parties to this action are the children of Jennie Latta and are her only heirs at law. We will refer to plaintiff in error as "John" and to defendant in error as "Trine" or as the "fiduciary." Jennie Latta will be referred to as "Jennie."
It is vital to the determination of this case for us to recognize and to explain at the outset the background of the property rights held by parties to this appeal. Also, statement must be made as to the historical relationship between these parties at least *692 to the extent it has a bearing upon the conduct of Trine in her fiduciary capacity.
All Kansas and Colorado property significant to this case was originally owned by J. M. Latta, the husband of Jennie and father to John and Trine. Upon his death during the year 1923, he devised a life estate in an undivided one-half interest to Jennie. The other half of the life estate and all of the remainder were devised in equal shares to John and Trine. There was thus created a community of interest between Jennie, John and Trine in the property involved here, in the income it produced and in the expenses attendant to its preservation.
In 1946, at John's request and with John's consent, Trine assumed the primary responsibility of providing a home and care for their mother, Jennie. In 1951 both John and Trine concluded that Jennie's mental condition was such that a judicial determination of her competency should be made. In that year Jennie was adjudicated a mental incompetent and hospitalized, and Trine was appointed conservatrix of her estate. In 1957 Jennie died intestate and Trine, by court order, continued her management of Jennie's estate as conservatrix with all powers of an administratrix. In 1966 a final hearing was held for the purpose of closing the estate; however, during the year 1954 and again in 1964, John filed generalized objections to Trine's fiduciary actions and accounts and petitioned for accurate reports. On the basis of these general objections, specific matters of controversy were developed by the parties and were heard by the trial court. Ultimately the trial court ordered Trine to reimburse the estate of Jennie in the aggregate sum of $8,196.80. Both parties to this appeal have assigned error to the trial court's ruling on the various controverted matters. John's objections, as an heir, shall be considered first.

1. OBJECTIONS BY HEIR
John's basic and primary objection is that the trial court heard and determined the disputes between him and Trine on the basis that they involved an accounting between heirs, during which benefits to John and acts on his part could be considered. He contends that the matter must be treated as a strict statutory accounting by a fiduciary to a court in which Trine carries the burden of justifying her acts as being properly performed in the interest of the estate, and in which his acts and past or future benefits to him are not to be considered. Under his view of such an action, equitable principles could not be applied.
In our opinion he has misapprehended the nature of his rights. Our Supreme Court has made it clear that where an estate or the heirs do not suffer any loss by reason of irregularities on the part of a fiduciary as to the filing and contents of her accounts, the fiduciary will not be denied the right to have her final accounting approved and be discharged from her trust. Canaday v. Kauffman, 140 Colo. 165, 342 P.2d 1027.
In this case, we feel that in determining whether any complainable loss occurred only the rights of John need be considered since John and Trine were the only parties with any interest in the estate. Therefore, the test in this case is whether Trine breached any fiduciary duty to John or whether John suffered any compensable loss by reason of Trine's acts or omissions in her capacity as a fiduciary.
Under these guidelines we examine the specific questions John's appeal has raised.
(a) Should the Colorado Fiduciary Have Paid the Taxes on the Kansas Property?
Trine paid taxes on Kansas property from her ward's funds, and John has objected to this act on the grounds that no claim for such taxes had been filed; the time for filing of claims had expired; and that this diverted funds from Colorado to another State without court authority, contrary to the then controlling C.R.S.1953, XXX-XX-XX. Although the matter is in doubt in the record, John contends that at the time of such payment Jennie held no *693 legal title in the lands for which the taxes were paid. We hold, as did the trial court, that the payment of such taxes was proper and that Trine should not now be charged for such payments. If at the time of payment Jennie held any legal or equitable interest in the lands taxed, Trine had a statutory right and perhaps a duty to pay such taxes to preserve her ward's estate, even in the absence of a claim being filed. C.R.S.1963, 153-12-7. This is particularly true since there was no acting Kansas fiduciary at the time payment was made.
If Jennie held no legal or equitable interest in the lands taxed, John benefited equally with Trine from the payment of taxes and suffered no loss. Under the rule of Canaday v. Kauffman, supra, Trine, as the fiduciary, will not now be held liable.
(b) Should the Fiduciary Have Discharged the Encumbrances on the Kansas Properties?
Trine discharged promissory notes with funds from Jennie's estate, which notes were secured by mortgages on the Kansas properties. John objects to these disbursements on the same grounds he challenged the payment of Kansas taxes. However, the record is clear that these payments were made with John's advance consent and possibly at his insistence. Having induced and encouraged such conduct, and no others being injured thereby, John is now estopped to object. Lyons v. Greene, 136 Ind.App. 419, 202 N.E.2d 172. The trial court properly refused to charge Trine for such payments.
(c) Could the Fiduciary be Paid for Her Ward's Care and Maintenance Expenses Which Were Incurred prior to the Adjudication of Incompetency?
The testimony concerning this matter is that from 1946 to 1951 Jennie lived with Trine and her husband, and they furnished her room and board. Trine and John agreed, when Jennie began living with Trine, that Trine should receive $150.00 per month for caring for Jennie. John now objects to this payment on the basis that no claim had been filed for this amount as required by C.R.S.1953, 153-12-8. John does not claim that Trine was not entitled to this amount. His sole objection is that the monies should not have been taken from the estate without a claim being filed.
This argument overlooks the fact that concurrent with her appointment as conservatrix in 1951 Trine petitioned for an award of $150.00 per month for all months elapsed from the year 1946 to the time of her appointment and for a future allowance of $150.00 per month from the time of her appointment through the duration of her appointment. John filed a written statement in support of this petition and claim. While it is true the court made no ruling on this petition and claim at the time it was filed, it is not precluded from subsequently approving payment based upon it. In Re Kirkpatrick's Estate, 109 Cal.App.2d 709, 241 P.2d 555. Additionally, John should now be estopped from questioning the payment. Lyons v. Greene, supra.
To the extent the trial court disallowed the claim for monthly maintenance allowance as to periods when Jennie was hospitalized, we think it acted properly since the basic nature of the claim was to compensate Trine for expenses she incurred from Jennie being cared for in Trine's home.
(d) Should the Fiduciary be Charged for the Value of Gifts Made by Her Ward prior to the Adjudication of Incompetency?
During the period from 1946 and prior to the adjudication of incompetency in 1951, Jennie allowed Trine's husband to farm the Colorado lands rent free. Also during such period, Jennie gave checks to Trine's son for his school expenses. John argues that Jennie's competency during such period was questionable and seeks to have Trine charged for the rental value of the Colorado lands leased to her husband and for the sums paid to her son.
*694 On this question the trial court found that Jennie was competent to transact her business during this period, and we find no basis within the record to rule, as a matter of law, that such finding was in error.
(e) Should the Fiduciary also be Charged Interest on Charges Levied against Her?
John lastly asserts that the trial court should have allowed him interest on those amounts for which Trine was charged. His theory here is that such money was fraudulently converted and that C.R.S.1963, 73-1-2 authorizes the court to impose an interest allowance. The record does not disclose that any of the charges made against the fiduciary were levied because of a fraudulent taking, and we find no reversible abuse of discretion by the trial court.

2. OBJECTIONS BY FIDUCIARY
Trine first contends that written objections should have been required with respect to each and every contested item. Ordinarily this would be the case. In re Yagoda's Estate, 28 Misc.2d 398, 213 N.Y.S.2d 980; In re Kirkpatrick's Estate, supra. Here, however, the record shows that the conservatrix acquiesced in proceeding to trial on the specific matters of dispute after waiving her demand that specific written objections be filed.
Trine also urges that the trial court erred in charging her with the following items: (a) Sums Trine paid herself for the care of Jennie subsequent to Jennie's adjudication as a mental incompetent and while Jennie was hospitalized; and (b) payments for various expenses connected with farming operations in Kansas and Colorado.
The trial court found, in effect, that there was insufficient evidence to establish whether the above expenditures were proper or for whose benefit payment was made. As to these expense items, Trine carried the burden of justifying her accounts to the court, and obviously the court was not satisfied that such burden was met. From our examination of the record, we cannot say that the rulings and conclusions of the trial court on these matters were clearly erroneous and should be disturbed. In re Estate of Blanpied, 155 Colo. 133, 393 P.2d 355. Therefore, we affirm the judgment of the lower court with respect thereto.
Judgment is affirmed.
COYTE and DWYER, JJ., concur.