COLORADO COURT OF APPEALS                                  **2017COA114**

_____

Court of Appeals No. 16CA1598
Logan County District Court No. 11PR17
Honorable Carl S. McGuire, III, Judge

_____

In the Interest of Kylee Becker, Protected Person,

and

Aaron Becker, Conservator for Kylee Becker,

Petitioner-Appellee,

v.

Wells Fargo Bank, N.A.,

Appellant.

_____

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Román and Lichtenstein, JJ., concur

Announced August 24, 2017

_____

No Appearance for Petitioner-Appellee

Brown Dunning Walker P.C., David C. Walker, Denver, Colorado, for Appellant

¶ 1    In this conservatorship case, appellant, Wells Fargo Bank, N.A. (Wells Fargo), appeals the trial court's denial of its motion for reconsideration of the order to restore funds to a conservatorship account. We affirm in part, reverse in part, and remand to the trial court for further factual findings.

## I. Background

¶ 2    In June 2011, the trial court ordered Wells Fargo to establish a conservatorship account for the benefit of eleven-year-old Kylee Becker (the beneficiary) to be maintained by her father, Aaron Becker (Becker). It was intended to be a restricted account for the beneficiary's settlement funds obtained as a result of a personal injury claim. In its order, the court stated that no funds could be withdrawn from the account except by "separate certified order of this court." In August 2011, Wells Fargo complied with this order and deposited funds into the account. In August 2014, Becker reported to the trial court that the account had a balance of $56,642.46. The court approved this report.

¶ 3    In May 2012, Wells Fargo allowed Becker to make unauthorized transfers from the account until it had a negative

1

balance of $11.98. Wells Fargo closed the account in November 2015.

¶ 4    In August 2016, the trial court issued a show cause order to Wells Fargo and Becker related to the removal of funds without a court order. The court required "Wells Fargo to show cause why [it] had not opened a restricted account. . . . And for Aaron Becker to show cause why he has not been complying with the court's orders of filing annual reports to account for the money to the court, and to otherwise show he has not breached his fiduciary duty to the ward[.]" At the show cause hearing, Becker testified that he took funds from the account for his personal expenses, as well as to pay rent, groceries, utilities, sports activities expenses, and other expenses for the beneficiary. The trial court ordered Becker to file an accounting of how the funds were used from August 2013 to the date that the account was emptied and closed. Becker agreed.

¶ 5    A representative for Wells Fargo testified that Becker was able to withdraw funds from the account without a court order because the account was not opened as a restricted account. Instead, due to a "coding error," it was opened as an unrestricted fiduciary

account. The court then ordered Wells Fargo to provide additional bank statements from the conservatorship account.

¶ 6     A week after the hearing, the court ordered Becker and Wells Fargo to restore funds taken from the depleted account and found them jointly and severally liable for breach of fiduciary duty. Accordingly, the court ordered Wells Fargo to restore $56,642.46, the amount last reported to the court, to a new restricted conservatorship account.

¶ 7     Wells Fargo moved to reconsider the order to restore funds, arguing that no evidence suggested that Wells Fargo was 100% liable, and that the trial court should have considered the percentage of fault attributable to Wells Fargo and Becker as required by section 13-21-111.5, C.R.S. 2016. It further requested that the court set a hearing to determine the relative degrees of liability between it and Becker regarding the mismanagement of the account and that the court determine the amount of the depleted funds actually spent for the benefit of the beneficiary so as not to afford her a double recovery.

¶ 8     The trial court denied this motion, concluding that its order was based on the court's powers under sections 15-10-501 to -505,

C.R.S. 2016, and that section 13-21-111.5 did not apply. The trial court further stated that Wells Fargo had had the power to correct the coding error, and that but for Wells Fargo's negligence ab initio, Becker would not have been able to drain the account. Further, it stated that Wells Fargo could exercise its rights to seek contribution and comparative negligence from Becker by filing a separate civil action.

¶ 9 The trial court certified its order to restore funds and its order denying Wells Fargo's motion pursuant to C.R.C.P. 54(b) in September 2016.

## II. Section 13-21-111.5

¶ 10 Wells Fargo contends that the trial court erred when, in denying the motion for reconsideration, it determined that section 13-21-111.5 did not apply to this proceeding and therefore did not apportion liability between Wells Fargo and Becker. We disagree.

### A. Standard of Review

¶ 11 We review questions involving statutory interpretation de novo. *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010).

### B. Applicable Law

4

¶ 12    According to the joint liability statute on which Wells Fargo relies,

> [i]n an action brought as a result of death or injury to a person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced that claimed injury, death, damage, or loss, except as provided in subsection (4) of this section.

§ 13-21-111.5(1). The exception states that joint liability shall be imposed on "two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act." § 13-21-111.5(4). In that event, defendants will only be held responsible for the degree or percentage of fault assessed to each of them. *See id.*

¶ 13    As the trial court's order noted, it based its order on the power granted to trial courts to supervise fiduciary administration of estates. *See* § 15-10-501. As relevant here, if a court, after a hearing on its own motion, determines that a breach of fiduciary duty has occurred or an exercise of power by a fiduciary has been improper, it may order any one or more of the following: (1) a surcharge or sanction of the fiduciary pursuant to section 15-10-

504; (2) the removal of a fiduciary; or (3) such further relief as the court deems appropriate to protect the ward or protected person or the assets of the estate. § 15-10-503(g), (h), (i).

¶ 14    The trial court may surcharge the fiduciary for any damage or loss to the estate, beneficiaries, or interested persons. Such damages may include compensatory damages, interest, and attorney fees and costs. § 15-10-504(2)(a). It can also order such other sanctions as it deems appropriate. § 15-10-504(4).

¶ 15    When interpreting statutes, we must read them as a whole to ascertain legislative intent and to give consistent, harmonious, and sensible effect to all their parts. *See Taylor v. Taylor*, 2016 COA 100, ¶ 27, 381 P.3d 428, 433. To determine legislative intent, we first look to the words of the statute and give effect to their common meanings. *Id.* If those words are clear and unambiguous, we apply the statute as written. *Id.* We also must read the language at issue in context and in the context of the entire statutory scheme. *Jefferson Cty. Bd. of Equalization*, 241 P.3d at 935.

### C.  Analysis

¶ 16    We conclude that the trial court correctly determined that section 13-21-111.5 does not apply in this case, based on a plain

reading of the statutes and their interpretation in appellate decisions.

¶ 17     Based on a reading of the other sections surrounding the section at issue, title 13 was intended to contemplate limitations on damages in only those actions brought as a result of negligence or another tort.  *See* § 13-21-111, C.R.S. 2016 ("Negligence cases--comparative negligence as a measure of damages"); § 13-21-111.6, C.R.S. 2016 ("In any action by any person or his legal representative to recover damages for a *tort* resulting in death or injury to person or property . . . .") (emphasis added); *see also Schwankl v. Davis*, 85 P.3d 512, 514 (Colo. 2004) (relying on surrounding statutes to support statutory interpretation).  In this context, the plain language of section 13-21-111.5(1) demonstrates that it does not contemplate surcharge proceedings, since it applies to those actions brought "as a result of a death or an injury to person or property."

¶ 18     Indeed, section 13-21-111.5 references "defendants" in outlining the limitations on liability.  No defendants are present in this case, because it is a surcharge proceeding that arises from the supervisory power of the court over parties that include, but are not

7

limited to, personal representatives, special administrators, guardians, conservators, trustees, agents under a power of attorney, and custodians. *See* § 15-10-501(3).

¶ 19    On the other hand, the plain language of section 15-10-504 shows that the surcharge proceeding it creates is distinct from a tort proceeding. Pursuant to its authority under 15-10-504, the court initiated proceedings to evaluate the administration of the trust by both Wells Fargo and Becker, and then surcharged, or fined, Wells Fargo for its liability in the mismanagement of the account. While the court determined that Becker and Wells Fargo were jointly and severally liable for a breach of fiduciary duty, such a determination was not made as a result of an action in tort; it was instead an evaluation that prompted remedial measures by the court under 15-10-504.

¶ 20    We further note that, under *People v. Bagby*, 734 P.2d 1059, 1061-62 (Colo. 1987), the adoption of a comprehensive regulatory program, with detailed attention to various types of regulation for different reasons thereof, evinces an intent on the part of the General Assembly that, unless otherwise indicated by specific provisions of the relevant code, regulation should be limited to

those specific provisions. While *Bagby* referred specifically to general and specific criminal statutes, we nevertheless conclude that the probate code, a comprehensive regulatory program with detailed attention to the regulation of fiduciary duties and other probate interests, was intended to preclude the application of other regulatory schemes — in this instance, the portion of the code dedicated to limitations on damages in tort actions.

¶ 21    Case law supports our analysis. In its determination of the applicability of section 15-10-504 to a tort proceeding, another division of this court has concluded that "section 15-10-504 does not create remedies or procedures for adjudicating tort claims. Rather, it is part of a broader section of law dealing with judicial 'oversight' or 'supervision' of fiduciaries in the administration of estates." *Taylor*, ¶ 28, 381 P.3d at 433. The division further concluded that subsection 504(2) authorizes the court to impose surcharges on a fiduciary after a hearing. *Id.* at ¶ 29, 381 P.3d at 433. The use of "surcharge" in this section "suggest[s] that it was intended, in its verb form, to mean something like '([o]f a court) to impose a fine on a fiduciary for breach of duty' [and] does not

purport to apply to trials resulting in jury determinations of tort claims." *Id.* (quoting Black's Law Dictionary 1670 (10th ed. 2014)).

¶ 22　　Although the division in *Taylor* was not examining the applicability of section 13-21-111.5 to the case, it concluded that "a trial on a tortious breach of fiduciary duty claim is not a 'surcharge proceeding' under section 15-10-504." *Id.* at ¶ 30, 381 P.3d at 433-34.  As a result, remedies and procedures in tort, like those in section 13-21-111.5 would not apply.

¶ 23　　Wells Fargo nevertheless argues that judicial interpretations of section 13-21-111.5 have concluded that the statute applies to "any action," including proceedings not sounding in tort.  *See Loughridge v. Goodyear Tire & Rubber Co.*, 207 F. Supp. 2d 1187, 1191 (D. Colo. 2002); *Harvey v. Farmers Ins. Exch.*, 983 P.2d 34, 38 (Colo. App. 1998), *aff'd and remanded sub nom. Slack v. Farmers Ins. Exch.*, 5 P.3d 280 (Colo. 2000).  However, these cases refer specifically to the application of section 13-21-111.5 to product liability claims, which are beyond the realm of probate matters. Wells Fargo also cites *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049 (Colo. 1995), as clear evidence that the supreme court has already applied section 13-21-111.5 to cases involving a breach of

10

fiduciary duty. However, *Resolution Trust* is also easily distinguishable, since the breach of fiduciary duty claim there arose in a tort action rather than in a probate proceeding initiated by the court to supervise fiduciary administration of a trust.

¶ 24 Accordingly, we conclude that the court did not err in determining that section 13-21-111.5 is inapplicable to proceedings under section 15-10-504. We thus affirm the court's order finding Wells Fargo jointly and severally liable for the mismanagement of the conservatorship account.

## III. Denial of Hearing to Apportion Liability

¶ 25 Wells Fargo next contends that the trial court erred by holding it jointly and severally liable for the mismanagement of the account without any record support for such a finding. Wells Fargo bases this argument on the applicability of section 13-21-111.5(4) to the matter, under which a court can hold parties jointly and severally liable only if it finds that the parties "consciously conspire[d] and deliberately pursue[d] a common plan or design to commit a tortious act." Because we have already concluded that section 13-21-111.5 does not apply here, we need not address this issue.

## IV. Denial of Hearing to Determine Benefit

11

¶ 26   Wells Fargo contends that the trial court erred by ordering it to restore the full amount of $56,642.46 to the restricted account because, based on the evidence produced at trial, Becker withdrew some of those funds to pay for food, schooling, and other necessities for the beneficiary. As a result, Wells Fargo argues, requiring it to restore 100% of the funds without any determination of the amount actually used for the beneficiary could result in a double recovery in her favor. We agree.

## A. Standard of Review

¶ 27   As stated above, the trial court's authority to surcharge Wells Fargo arises from section 15-10-504(2). The proper measure of damages involves a question of law we review de novo. *See In re Estate of Sandstead*, 2016 COA 49, ¶ 31, ___ P.3d ___, ___ (*cert. granted* Nov. 21, 2016). We review the trial court's factual findings for clear error. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12, 292 P.3d 1201, 1204.

## B. Applicable Law

¶ 28   If the trial court determines that a personal representative has breached his or her fiduciary duty or exercised his or her power improperly, the court may surcharge the fiduciary for any damage

or loss to the estate, beneficiaries, or interested persons. § 15-10-504(2)(a). In other words, the court may order a personal representative to reimburse the estate for the losses caused by his or her mismanagement. *Sandstead,* ¶ 32, ___ P.3d at ___ (citing §§ 15-10-501(2)(c), (3), -504(2)). To justify a surcharge, the court must find that the personal representative caused loss to the estate and prejudice to the persons in interest. *See Blanpied's Estate v. Robinson,* 155 Colo. 133, 137-38, 393 P.2d 355, 357 (1964); *In re Estate of McKeen,* 541 P.2d 101, 103 (Colo. App. 1975) (not published pursuant to C.A.R. 35(f)).

## C. Analysis

¶ 29    We agree that the court was required to make findings regarding the amount of funds actually used for the beneficiary.

¶ 30    Wells Fargo does not dispute the court's determination that it was liable for the mismanagement of the account. However, at the hearing, Becker testified that, in the course of his spending, he had used some of the funds from the conservatorship account to pay for the beneficiary's schooling, food, housing, and other needs. The trial court ordered that Becker file an accounting of his expenses to determine the amount that actually went to the beneficiary, but

Becker never filed this accounting. As a result, the court could not determine what portion of the funds were appropriately spent on the beneficiary and what portion of the funds was misused. Without this calculation, the court simply required Wells Fargo to restore all the funds. As Well Fargo asserts, this may have allowed the beneficiary an impermissible double recovery. *See Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo. 1992) ("Generally, a plaintiff may not receive a double recovery for the same wrong.").

¶ 31 Accordingly, we reverse the court's order that Wells Fargo restore 100% funds in the trust account. We remand the case for the trial court to determine the amount spent for the benefit of the beneficiary, based on the existing record and any additional evidence received within the court's discretion.

## V. Conclusion

¶ 32 Therefore, the court's order is affirmed in part and reversed in part, and the case is remanded for further factual findings, and based on those findings, entry of an order regarding the amount of Wells Fargo's liability, if any.

JUDGE ROMÁN and JUDGE LICHTENSTEIN concur.