Colorado Court of Appeals Opinions || July 16, 2015


Colorado Court of Appeals -- July 16, 2015
2015 COA 95. No. 13CA1075. Oldham v. Pedrie.



 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 95

 
 



 Court of Appeals No. 13CA1075
 Teller County District Court No. 11CV143
 Honorable Barbara L. Hughes, Judge


 Amanda R. Oldham, Ashley E. Oldham, and Sandra L. Oldham, as Personal Representative for the Estate of Lorna Oldham, a/k/a Lorna E. Oldham, deceased,

 Plaintiffs-Appellants,

 v.

 Donald L. Pedrie and Georgia L. Follansbee,

 Defendants-Appellees.


 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
 AND CASE REMANDED WITH DIRECTIONS

 Division I
 Opinion by JUDGE TAUBMAN
 Gabriel and Booras, JJ., concur

 Announced July 16, 2015


 Henry B. Eastland, P.C., Henry B. Eastland, Colorado Springs, Colorado, for Plaintiffs-Appellants

 John W. Sabo, III, P.C., John W. Sabo, Colorado Springs, Colorado, for Defendants-Appellees
 Â 

 
 Â¶1Â Â Â Â Â Â Â  Plaintiffs, Amanda R. Oldham and Ashley E. Oldham (the Oldhams), and Sandra L. Oldham, as personal representative of the estate of Lorna Oldham (the Estate), appeal the district courtâs judgment denying their claim for declaratory relief. Addressing an issue of first impression, we conclude that, under the Colorado and Michigan probate codes, a secured creditorâs lien on real property is not extinguished when the creditor presents an unconditional claim against a decedentâs estate but does not pursue a disallowed claim within sixty-three days.[1] Therefore, we affirm the district courtâs judgment on this issue, and otherwise affirm in part and reverse in part.
 
 I. Background
 
 Â¶2Â Â Â Â Â Â Â  This appeal involves a parcel of land in Teller County (the Teller County Property). In 1976, Lorna Oldham purchased theÂ Teller County Property from defendant, Donald L. Pedrie[2], in exchange for a promissory note in the amount of $143,475.20, secured by a Deed of Trust (the 1976 Deed of Trust). In 2005, Lorna Oldham signed a second promissory note to Pedrie in the amount of $148,000, along with a check for $30,000, intending that that promissory note replace the first promissory note.


 
 Â¶3Â Â Â Â Â Â Â  In 2007, Lorna Oldham died and an estate proceeding was opened in Michigan. Pursuant to Michiganâs probate laws, Pedrie filed a claim with the personal representative of Lorna Oldhamâs estate in the amount of $148,000, asserting that he held a promissory note secured by a deed of trust on the Teller County Property. Under the threat of foreclosure, the personal representative paid Pedrie $15,000 to stop the foreclosure action.
 
 Â¶4Â Â Â Â Â Â Â  However, the personal representative subsequently disallowed Pedrieâs claim against the estate on the ground that he had failed to provide sufficient proof of the amount owed on the promissory note. Specifically, the personal representative informed Pedrie that theÂ amortization schedule showed that the debt remaining on the promissory note was only $100,942.97, not the $148,000 that he claimed. Pedrie did not contest the disallowance in the Michigan court.


 
 Â¶5Â Â Â Â Â Â Â  Pedrie then contacted the Oldhams, who had inherited the Teller County Property, and threatened them with foreclosure. Under the threat of foreclosure, the Oldhams sent Pedrie two payments, one in 2009 and a second in 2012, totaling $24,000, to prevent him from foreclosing on the property.
 
 Â¶6Â Â Â Â Â Â Â  In 2011, the Oldhams filed a complaint for declaratory relief in Teller County District Court seeking to extinguish the 1976 Deed of Trust, and the return of the $24,000 that they had paid Pedrie. The Estate joined the complaint, asking for the return of the $15,000 that it had paid to Pedrie.
 
 Â¶7Â Â Â Â Â Â Â  The Oldhams and the Estate contended that the 1976 Deed of Trust was extinguished because Pedrie had failed to contest the disallowance of his unconditional claim in the Michigan court. The district court disagreed, finding that while Pedrie may be barred from bringing any further claim against the assets of the Estate, theÂ 1976 Deed of Trust was valid, and he could seek to recover on the second promissory note through a C.R.C.P. 120 foreclosure proceeding against the Oldhams.


 
 II. Uniform Probate Procedures
 
 Â¶8Â Â Â Â Â Â Â  The Oldhams and the Estate contend that the 1976 Deed of Trust was extinguished when Pedrie declined to contest the disallowance in the Michigan court. This contention presents an unresolved question under Colorado and Michigan law: whether a secured creditor whose unconditional claim has been disallowed by a decedentâs estate, and who declines to contest the disallowance, may later enforce the underlying security. We agree with Pedrie and conclude that such a secured creditor may do so.
 
 A. Standard of Review
 
 Â¶9Â Â Â Â Â Â Â  We review de novo questions of statutory interpretation. Estate of Russo v. Sunrise Healthcare Corp., 994 P.2d 491, 493 (Colo. App. 1999); Speicher v. Columbia Tp. Bd. of Trustees, 860 N.W.2d 51, 55 (Mich. 2014). In determining the meaning of a statute, we must ascertain and give effect to the General Assemblyâs intent. Jefferson Cnty. Bd. of Equalization v. Gerganoff, 241 P.3dÂ 932, 935 (Colo. 2010). The language at issue must be read in the context of the statute as a whole and the entire statutory scheme, so that our interpretation gives consistent, harmonious, and sensible effect to all parts of the statute. Id.


 
 Â¶10Â Â Â Â Â Â Â  Provisions of the probate code must be construed liberally to promote a speedy and efficient system for settling a decedentâs estate, and making distribution to his or her successors, while promoting uniformity in the administration of estates among different jurisdictions. See Â§ 15-10-102(1), C.R.S. 2014; In re Estate of Hall, 948 P.2d 539, 543 (Colo. 1997).
 
 B. Applicable Law
 
 Â¶11Â Â Â Â Â Â Â  As a threshold matter, we must determine whether to apply Michigan or Colorado law. In its order, the district court relied on Colorado law, and the parties rely on both Colorado and Michigan law in their briefs. However, we recognize that Lorna Oldhamâs estate was probated in Michigan, under Michigan law. Because Colorado and Michigan have both adopted the Uniform Probate Code, see Â§Â§ 15-12-801 to -816, C.R.S. 2014; Mich. Comp. Laws Â§Â§ 700.3801 to -3815 (2014), and because we conclude that the resultÂ is the same under either, we will apply both Michigan and Colorado law. Nevertheless, the law of the situs of real estate determines its devolution. James R. Wade & Howard E. Parks, Colorado Law of Wills, Trusts and Fiduciary Administration Â§ 9.3 (6th ed. 2013).


 
 Â¶12Â Â Â Â Â Â Â  Both states set forth time limits within which claims against a decedentâs estate must be brought or are forever barred. See Â§ 15Â­12-803, C.R.S. 2014; Mich. Comp. Laws Â§ 700.3803 (2014). However, actions to enforce mortgages, pledges, and liens on the property of a decedentâs estate are not affected by these time limitations. Â§ 15-12-803(3)(a) (âNothing in this section affects or prevents . . . [a]ny proceeding to enforce any mortgage, pledge, or other lien upon property of the estate . . . .â); Mich. Comp. Laws Â§ 700.3803(3)(a) (âThis section does not affect or prevent . . . [a] proceeding to enforce a mortgage, pledge, or other lien on estate property.â).
 
 Â¶13Â Â Â Â Â Â Â  Only Colorado appellate courts have addressed a secured creditorâs options when he or she holds a valid lien on property in a decedentâs estate. See Blanpiedâs Estate v. Robinson, 155 Colo. 133, 393 P.2d 355 (1964); see also Ross v. Colo. Natâl Bank, 170Â Colo. 436, 463 P.2d 882 (1969); Alberico v. Health Mgmt. Sys., Inc., 5 P.3d 967 (Colo. App. 2000); Willis v. Neilson, 32 Colo. App. 129, 507 P.2d 1106 (1973). In Blanpiedâs Estate,[3] the Colorado Supreme Court held that when a creditorâs debt is secured by a valid lien on property in the decedentâs estate, he or she has three alternatives to collect on the debt: (1) the creditor may disregard the estate and proceed against the security; (2) the creditor may file a conditional claim in the estate so that, in the event of a deficiency after proceeding against the security, he or she may share in the assets of the estate as an unsecured creditor; or (3) the creditor may file a claim in the estate proceeding for the entire debt if he or she surrenders the security. 155 Colo. at 139, 393 P.2d at 358. Therefore, a secured creditorâs failure to file a claim against the estate under the probate procedures neither discharges the lien nor renders it unenforceable. Id.


 
 Â¶14Â Â Â Â Â Â Â  Finally, section 15-12-806, C.R.S. 2014, and Mich. Comp. Laws Â§ 700.3806 (2014), apply after a creditor makes a claim on aÂ decedentâs estate. See In re Estate of Hall, 948 P.2d at 545 (â[U]pon the disallowance of a timely presented claim, the deadline for the claimant to file a petition for allowance is governed by the time limits in section 15-12-806(1).â). Those sections provide that disallowed claims are barred unless the claimant takes one of two actions within sixty-three days: (1) the claimant files a petition for allowance in court; or (2) the claimant commences a proceeding against the personal representative. Â§ 15-12-806(1); Mich. Comp. Laws Â§ 700.3806(1).


 
 Â¶15Â Â Â Â Â Â Â  Coloradoâs section 15-12-806(1) and Michiganâs section 700.3806(1) contain no explicit exception for secured creditors. Therefore, although secured creditors are exempt from the probate codeâs initial claim filing deadlines under Coloradoâs section 15-12Â­803(3)(a) and Michiganâs section 700.3803(3)(a), whether that exemption supersedes the post-disallowance procedures in Coloradoâs section 15-12-806(1) and Michiganâs section 700.3806(1) is unresolved.
 
 Â¶16Â Â Â Â Â Â Â  Also unresolved is whether a secured creditor who chooses to file a claim against a decedentâs estate, and whose claim isÂ disallowed by an estate, may opt out of the probate codeâs procedures and look only to the security.


 
 Â¶17Â Â Â Â Â Â Â  We conclude, for two reasons, that a secured creditor may recover on a security interest through a foreclosure proceeding.
 
 Â¶18Â Â Â Â Â Â Â  First, by their plain language, Coloradoâs section 15-12Â­803(3)(a) and Michiganâs section 700.3803(3)(a) expressly provide that the requirement to file a notice of claim in an estate proceeding does not affect or prevent the right of a secured creditor to enforce a mortgage or other liens on estate property.
 
 Â¶19Â Â Â Â Â Â Â  Second, because the post-disallowance procedures in Coloradoâs section 15-12-806(1) and Michiganâs section 700.3806(1) do not require a secured creditor to pursue an unconditional claim that is disallowed, a secured creditor is not required to do so.
 
 C. Analysis
 
 Â¶20Â Â Â Â Â Â Â  The district court found that at the time of her death, Lorna Oldham owed a debt to Pedrie, which was secured by the 1976 Deed of Trust. In 2008, Pedrie sought payment on the debt by filing a claim with the Estate in the amount of $148,000. Pedrie did notÂ expressly reserve his right to foreclose on the deed of trust in a separate proceeding.


 
 Â¶21Â Â Â Â Â Â Â  As noted, the Estateâs personal representative denied Pedrieâs claim on the ground that he failed to provide sufficient proof substantiating the amount claimed. At that point, pursuant to both Colorado and Michigan law, Pedrie had sixty-three days to contest the disallowance in Michigan court. See Â§ 15-12-806(1); Mich. Comp. Laws Â§ 700.3806(1). He had the option of filing a petition for allowance in Michigan court, or commencing a proceeding against the personal representative. Because he did neither, the Oldhams and the Estate contend that Pedrie was barred from bringing any subsequent action against the Estate to collect on the promissory note. We disagree.
 
 Â¶22Â Â Â Â Â Â Â  Contrary to the contention of the Oldhams and the Estate, we conclude that no provision in the probate code of either Michigan or Colorado requires a secured creditor to pursue relief after a claim is disallowed. To the contrary, Coloradoâs section 15-12-803(3)(a) expressly provides that ânothing in this section affects or preventsâÂ any proceeding to enforce a mortgage or other lien. See Mich. Comp. Laws Â§ 700.3803(3)(a) (same).


 
 Â¶23Â Â Â Â Â Â Â  Blanpiedâs Estate, on which the Oldhams and the Estate rely, is distinguishable because that case did not address the circumstances presented here. Thus, the courtâs enumeration of the alternatives available to a creditor did not preclude the alternative we address here.
 
 Â¶24Â Â Â Â Â Â Â  We also reject the contention of the Oldhams and the Estate that, because Pedrie did not contest the disallowance of his claims in the Michigan court, the 1976 Deed of Trust was extinguished under section 38-39-207, C.R.S. 2014. That statute provides that liens âcreated by any instrument shall be extinguished . . . at the same time that the right to commence a suit to enforce payment of the indebtedness or performance of the obligation secured by the lien is barred by any statute of limitation of this state.â See Martinez v. Contâl Enters., 730 P.2d 308, 313 (Colo. 1986) (â[W]hen an action to recover on a promissory note is barred, any lien securing such note is extinguished.â). Because we have concluded that Pedrieâs right to commence a suit â here, a foreclosureÂ proceeding â to enforce payment of the alleged indebtedness secured by the deed of trust is authorized by section 15-12Â­803(3)(a), section 38-39-207 does not extinguish Pedrieâs lien.


 
 Â¶25Â Â Â Â Â Â Â  Therefore, we conclude that once a secured creditor presents an unconditional claim, without expressly reserving the right to enforce the security, and it is disallowed by an estateâs personal representative, the creditor need not contest the disallowance in court within sixty-three days. If the secured creditor does not do so, the debt is not extinguished, and any lien securing the debt may be pursued in a foreclosure proceeding.
 
 Â¶26Â Â Â Â Â Â Â  Our decision does not conflict with the language in Blanpiedâs Estate which allows a secured creditor to âfile a conditional claim [against a decedentâs estate] so that he may share in any of the assets in the event there is a deficiency.â 155 Colo. at 138, 393 P.2d at 358. We recognize that a secured creditor may proceed against both a security interest and the assets of an estate. However, in such cases, any claim against the estate must be âconditional.â Id. Even though Pedrie did not condition his claim orÂ reserve the right to proceed against the security, we conclude that he did not waive his right to enforce the deed of trust.


 
 Â¶27Â Â Â Â Â Â Â  We must read these provisions in âthe context of the entire statutory scheme,â Gerganoff, 241 P.3d at 935. Accordingly, we conclude that Coloradoâs section 15-12-803(3)(a) and Michiganâs section 700.3803(3)(a) provide a separate remedy to secured creditors so that the claim procedureâs time limitations do not apply when they seek to enforce their rights under a deed of trust. Pursuant to Blanpiedâs Estate, Pedrie, as a secured creditor, could choose how to pursue the debt owed on the promissory note. He chose to file a claim with the estate for the entire debt, and in doing so, he did not abandon his ability to later foreclose on the deed of trust.
 
 Â¶28Â Â Â Â Â Â Â  Therefore, we conclude that the district court did not err when it found that Pedrie held a valid deed of trust on the Teller County Property.[4]
 
 III. Novation


 
 Â¶29Â Â Â Â Â Â Â  The Oldhams contend, in the alternative, that Pedrieâs 1976 lien on the Teller County Property was extinguished under section 38-39-207, either because Pedrie accepted a new $148,000 promissory note in 2005 that was not secured by a deed of trust, or because there was a novation. We disagree.
 
 A. Standard of Review and Applicable Law
 
 Â¶30Â Â Â Â Â Â Â  Whether there has been a novation is ordinarily a question of fact, and proof of novation may be established by evidence of an express understanding to this effect or by circumstances showing such assent. Haan v. Traylor, 79 P.3d 114, 116 (Colo. App. 2003).
 
 Â¶31Â Â Â Â Â Â Â  Generally, we review findings of fact for clear error. E-470 Pub. Highway Auth. v. 455 Co., 3 P.3d 18, 22 (Colo. 2000).Â 


 
 Â¶32Â Â Â Â Â Â Â  As a division of this court has explained, âthe extinguishment of an old contract by the substitution of a new contract or obligation is an original promise known as a novation.â Haan, 79 P.3d at 116. The four requisites of a novation are a previous valid obligation, an agreement by the parties to abide by the new contract, a valid new contract, and the extinguishment of the old obligation by the substitution of the new one. Id. Novation is also defined as âthe act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party.â Blackâs Law Dictionary 1168 (9th ed. 2010).
 
 Â¶33Â Â Â Â Â Â Â  In United Bank of Lakewood v. Jefferson Industrial Bank, 791 P.2d 1250, 1253 (Colo. App. 1990), a division of this court held that â[p]arties to a note secured by a mortgage may substitute a new note for the original without impairing the security, although the terms of the two notes are not identical, so long as the original secured debt remains unpaid and there is no increase in the debt.â
 
 Â¶34Â Â Â Â Â Â Â  The district court rejected the Oldhamsâ contention that the 2005 promissory note constituted a novation and extinguished theÂ 1976 Deed of Trust under section 38-39-207. Because this conclusion is supported by the record, we may not set it aside.


 
 B. Analysis
 
 Â¶35Â Â Â Â Â Â Â  Relying on United Bank of Lakewood, the district court found that the original note amount was $143,475.20. It also found that the second promissory note was executed in the amount of $148,000. In addition, while, on its face, the 2005 promissory note was approximately $5000 greater than the 1976 Deed of Trust amount, the record contains unrebutted testimony that the principal plus interest due on the first note was greater than the amount due on the 2005 promissory note. Under these circumstances, we conclude that the 2005 promissory note did not constitute a novation and did not extinguish the 1976 Deed of Trust.
 
 IV. Findings on Debt Owed
 
 Â¶36Â Â Â Â Â Â Â  Next, the Oldhams contend that the district court erred by not making a finding on the total amount owed on the debt secured by the deed of trust. We agree.Â 


 
 Â¶37Â Â Â Â Â Â Â  C.R.C.P. 120 sets forth the procedures for securing an order authorizing sale under a power contained in an instrument like the 1976 Deed of Trust. Before issuing an order authorizing sale, the court must hold a hearing during which it determines whether there is a âreasonable probabilityâ that default has occurred. C.R.C.P. 120(d). C.R.C.P. 120 does not require the trial court to determine the amount owed on a secured debt. Rather, section 38Â­38-104, C.R.S. 2014, gives parties whose property has been foreclosed upon the opportunity to cure the default before a foreclosure sale and sets the procedure for a judicial determination of the amount owed on a secured debt.
 
 Â¶38Â Â Â Â Â Â Â  Here, the Oldhams brought a claim for declaratory relief seeking to extinguish the 1976 Deed of Trust. Pedrie filed a counterclaim in which he requested, pursuant to C.R.C.P. 120, an order authorizing sale.
 
 Â¶39Â Â Â Â Â Â Â  The parties introduced conflicting evidence at trial as to the amount the Oldhams owed to Pedrie on the secured debt. The Estateâs personal representative testified that, as of 1994, there remained between $55,000 and $58,000 in principal owed on theÂ debt. Further, the Oldhams introduced evidence of several payments by Lorna Oldham, the Estate, and the Oldhams made to Pedrie between 2005 and 2010, none of which Pedrie reported as income on his Internal Revenue Service filings.


 
 Â¶40Â Â Â Â Â Â Â  Pedrie admitted that between 1977 and 1988 he never notified Lorna Oldham about missing payments. Further, although Pedrie testified that he kept accurate business records for his used-car business, he had no records of any payments from Lorna Oldham.
 
 Â¶41Â Â Â Â Â Â Â  The court found in favor of Pedrie and issued an order authorizing foreclosure and sale of the Teller County Property without making a specific finding on the amount the Oldhams owe Pedrie on the secured debt. The district court then denied the Oldhamâs motion for a clarification of the order which requested a finding on the amount owed.
 
 Â¶42Â Â Â Â Â Â Â  Pedrie correctly asserts that, pursuant to C.R.C.P. 120, the district court was not required to determine the amount remaining on secured debt. However, the trial management order (TMO), which was signed by the parties and the district court, stated that âif the Court rules against [the Oldhams] and determines that theÂ 1976 Deed of Trust is still a valid lien on [the Oldhamsâ] property, then the Court must determine (as part of [a] declaratory judgment) the amount that is still owed to pay off this lien.â The Oldhams and the Estate are entitled to such a determination under section 38Â­38-104. Therefore, we conclude that the district court erred in not complying with the TMO. See C.R.C.P. 16(f)(5) (providing that the TMO controls the course of the trial and that modification of divergence from it should be permitted only upon a demonstration that the modification or divergence could not with reasonable diligence have been anticipated).


 
 Â¶43Â Â Â Â Â Â Â  Accordingly, we reverse and remand to the district court to determine, consistent with the TMO, the amount that remains owed by the Oldhams on the 1976 Deed of Trust.
 
 V. Attorney-Client Privilege
 
 Â¶44Â Â Â Â Â Â Â  The Oldhams and the Estate contend that the district court abused its discretion when it precluded them from asking Pedrieâs former attorney, Martin Kuhn, about several conversations he had with Pedrie during his negotiations with Lorna Oldham. We disagree.


 A. Standard of Review

 
 Â¶45Â Â Â Â Â Â Â  Whether evidence is properly excluded by the attorney-client privilege is a mixed question of fact and law. People v. Tucker, 232 P.3d 194, 198 (Colo. App. 2009). In reviewing the district courtâs ruling, âwe defer to the courtâs factual findings if competent evidence in the record supports them, and we review the courtâs legal conclusions de novo.â Id.
 
 B. Applicable Law
 
 Â¶46Â Â Â Â Â Â Â  The attorney-client privilege protects communications between an attorney and a client relating to legal services. Â§ 13-90Â­107(1)(b), C.R.S. 2014. The privilege âapplies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential.â Wesp v. Everson, 33 P.3d 191, 197 (Colo. 2001) (internal quotation marks omitted). Whether the privilege may be claimed is determined with respect to each specific communication and, âin deciding whether the privilege attaches, a trial court must examine each communication independently.â Id.


 
 Â¶47Â Â Â Â Â Â Â  A client may waive the privilege, either expressly or impliedly. Id.; see also People v. Trujillo, 144 P.3d 539, 543 (Colo. 2006). âTo prove an implied waiver, there must be evidence showing that the privilege holder, by words or conduct, has impliedly forsaken his claim of confidentiality with respect to the communication in question.ââ Wesp, 33 P.3d at 198 (internal quotation marks omitted). The burden of establishing that a waiver occurred is on the party seeking to overcome the privilege. Id.
 
 C. Analysis
 
 Â¶48Â Â Â Â Â Â Â  Pedrie called Kuhn to testify to the details of his negotiations with Lorna Oldham and her attorney, Dennis Pittman. He testified to the contents of several documents, letters, and other correspondence with Oldham and her representatives. Kuhn did not testify to any communications with Pedrie.
 
 Â¶49Â Â Â Â Â Â Â  During cross-examination, the Oldhams and the Estate asked Kuhn about many of the same negotiations with Lorna Oldham. However, when they sought to inquire into communications between Kuhn and Pedrie, Pedrie objected based on the attorney-client privilege, and the district court sustained the objection. TheÂ court precluded the Oldhams from asking questions that âencroach[ed] on communications with [Pedrie].â We discern no abuse of discretion.


 
 Â¶50Â Â Â Â Â Â Â  We recognize that the attorney-client privilege may not be used as âboth a sword and a shield.â Sedillos v. Bd. of Educ., 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004). However, Pedrie called Kuhn as a fact witness only, and Kuhn did not testify to any privileged communications with Pedrie. Therefore, the district court did not abuse its discretion in finding that Pedrie did not waive the attorney-client privilege, and in disallowing questioning Kuhn about his privileged communications with Pedrie.
 
 Â¶51Â Â Â Â Â Â Â  Therefore, we conclude that the district court did not abuse its discretion when it precluded the Oldhams from inquiring into privileged communications between Kuhn and Pedrie.
 
 VI. Constructive Trust
 
 Â¶52Â Â Â Â Â Â Â  Having concluded that the district court did not err when it found that Pedrie held a valid deed of trust on the Teller County Property, we need not address the Oldhamsâ and the Estateâs contention that the court erred in not imposing a constructive trustÂ for the reimbursement of the funds they paid Pedrie under threat of foreclosure.


 VII. Conclusion

 Â¶53Â Â Â Â Â Â Â  The judgment is affirmed in part and reversed and remanded in part. On remand, the district court is directed to make further factual findings to determine the amount the Oldhams owe to Pedrie on the debt secured by the 1976 Deed of Trust.

 JUDGE GABRIEL and JUDGE BOORAS concur.


 [1] A conditional claim is one where a secured creditor expressly asserts the right to recover from the assets of an estate any amount not provided by the security. James R. Wade & Howard E. Parks, Colorado Law of Wills, Trusts and Fiduciary Administration Â§ 16.1.4 (6th ed. 2013). Therefore, an unconditional claim is one that seeks to satisfy a claim from the assets of the estate without stating that the claim is contingent on enforcement of the security interest.

 [2] Donald Pedrieâs ex-wife Georgia L. Follansbee is also a defendant. She agreed to be bound by Pedrieâs arguments in this appeal. For simplicity, we refer to both of them as âPedrieâ in this opinion.

 [3] This case was decided before the enactment of the Colorado Probate Code in 1973. See Ch. 451, sec. 1, Â§Â§ 153-1-101 to 153-8Â­101, 1973 Colo. Sess. Laws 1538-1646.

 [4] We are not unsympathetic to the Oldhamsâ contention that permitting Pedrie to foreclose on the Teller County Property allows him a âsecond biteâ at collecting on Lorna Oldhamâs debt. See Harper Hofer & Assocs., LLC v. Nw. Direct Mktg., Inc., 2014 COA 153, Â¶18, ___ P.3d ___, ___ (noting that allowing parties a âsecond bite at the appleâ creates a less speedy and more expensive process for resolving disputes); Poleson v. Wills, 998 P.2d 469, 472 (Colo. App. 2000) (recognizing that the Colorado probate codeâs underlying purpose is the âspeedy and efficient settlement of estates and their distribution to successorsâ). Nevertheless, the Oldhamsâ and the Estateâs contentions do not comport with the statutory scheme. See People v. Hoinville, 191 Colo. 357, 361, 553 P.2d 777, 781 (1976) (It is the duty of the courts âto give effect to the laws as enacted by the legislature.â).




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || July 16, 2015


Back