18CA1728 Estate of Turnbough 11-10-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA1728 Arapahoe County District Court No. 17PR30322 Honorable Harold C. Hurst, Judge In re the Estate of Roosevelt Turnbough, deceased. Gladys Jones Turnbough, Appellant, v. Jahlanece Hayes, as Personal Representative of the Estate of Roosevelt Turnbough, Appellee. ORDER AFFIRMED Division VII Opinion by JUDGE FOX Berger and Lipinsky, JJ., concur Prior Opinion Announced January 16, 2020, Vacated in 20SC189 NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 10, 2021 Palmer Goertzel & Associates, P.C., Tamra A. Palmer, Greenwood Village, Colorado; Law Office of Jennifer S. Gormley, Jennifer S. Gormley, Greenwood Village, Colorado, for Appellant John A. Berman, Denver, Colorado, for Appellee 
 1 ¶ 1 Roosevelt Turnbough (Decedent) died without a will, and Jahlanece Hayes — his daughter — and Gladys Jones Turnbough vied to serve as his personal representative (PR). Gladys claimed, and Jahlanece disputed, that she and Decedent were common law married. Applying the test announced in People v. Lucero, 747 P.2d 660 (Colo. 1987), our prior opinion in this case concluded that the magistrate did not misapply the law in examining whether the couple had a mutual agreement to be married and a reputation in the community as a married couple before concluding that Gladys failed to prove a common law marriage. In re Estate of Turnbough, (Colo. App. No. 18CA1728, Jan. 16, 2020) (not published pursuant to C.A.R. 35(e)). ¶ 2 After our decision was announced, however, the Colorado Supreme Court decided a trio of cases that refine the Lucero test for common law marriage. In re Marriage of Hogsett, 2021 CO 1; In re Estate of Yudkin, 2021 CO 2; In re Marriage of LaFleur, 2021 CO 3. The court then granted certiorari in this case, vacated the division’s opinion, and remanded for reconsideration in light of those cases. 
 2 In re Estate of Turnbough, (Colo. No. 20SC189, Mar. 8, 2021) (unpublished order). ¶ 3 Having reconsidered in light of the updated framework announced in the Hogsett trilogy, we affirm the July 27, 2018, final order finding no common law marriage. Before addressing the common law marriage issue, we first reject Gladys’ arguments that (1) the magistrate’s August 1, 2017, order and the district court’s August 25, 2017, order are void because they lacked jurisdiction; and (2) the magistrate erred by failing to provide her with sufficient notice and to conduct a hearing before removing her as PR. I. Background ¶ 4 The Decedent died on February 25, 2017, with no will. He was survived by two children and two grandchildren. ¶ 5 Gladys filed an informal PR application on March 28, 2017, listing herself as Decedent’s wife. She did not list Decedent’s children or grandchildren. Her request was granted the following month, and she was issued letters of administration. ¶ 6 In a separate, formal intestate proceeding, Jahlanece filed a petition for formal PR appointment on March 30, 2017. Jahlanece’s 
 3 petition listed Decedent’s children, his grandchildren, and Gladys (as Decedent’s “live-in girlfriend”). On April 12, 2017, Jahlanece objected to Gladys’ informal PR appointment and sought to consolidate the two probate matters. ¶ 7 Following a non-appearance hearing
1 in Jahlanece’s formal appointment matter, the magistrate issued an April 21, 2017, order terminating Gladys’ informal PR appointment (and associated letters) and dismissing her informal proceeding.
2 Jahlanece was then formally appointed PR by letters of administration. ¶ 8 In May 2017, Gladys filed a petition to vacate or modify the magistrate’s formal appointment of Jahlanece, or for review of the magistrate’s April 21 order pursuant to C.R.M. 7(a). After reviewing Gladys’ petition, on August 1, 2017, the magistrate issued an order 1 C.R.P.P. 24 allows a district court to hold a non-appearance hearing in “any appropriate matter,” where attendance “is not required or expected” and “[a]ny interested person wishing to object” may do so by filing “a specific written objection with the court at or before the hearing[.]” C.R.P.P. 24 was amended in 2018, and the comments added at that time advise that a non-appearance hearing “is useful for matters required by statute to have a hearing when a party appearance is not required or mandated.” C.R.P.P. 24 cmt. (1). 2 The magistrate found that Jahlanece’s motion to consolidate was moot after the court dismissed Gladys’ probate action. 
 4 to set a hearing on the common law marriage issue. On August 25, 2017, the district court denied Gladys’ petition for review and adopted the magistrate’s April 21 and August 1 orders. ¶ 9 After a March 2018 bench trial on the common law marriage issue, on July 27, 2018, the magistrate issued an order finding that Gladys and Decedent were not common law married. II. Preservation and Standard of Review ¶ 10 Any challenge to the magistrate’s and the district court’s jurisdiction is properly before us. See BDG Int’l, Inc. v. Bowers, 2013 COA 52, ¶ 9 (“A challenge to a court’s subject matter jurisdiction is not waivable, and may be raised for the first time on appeal.”). ¶ 11 Gladys preserved her non-jurisdictional claims for review except her claim that she had insufficient notice of the non-
appearance hearing. See McGihon v. Cave, 2016 COA 78, ¶ 10 n.1 (“We do not consider arguments that were not raised in the district court.”). Gladys’ petition for review of the magistrate’s April 21 order acknowledged that she received mailed notice of the non-
appearance hearing. See Lyons Sav. & Loan Ass’n v. Dire’s Lock & 
 5 Key Co., 885 P.2d 345, 348 (Colo. App. 1994) (“The doctrine of judicial estoppel has been applied in Colorado to preclude a party, as a matter of law, from adopting a legal position which conflicts with an earlier position taken in the same or related litigation.”). ¶ 12 We review the magistrate’s and district court’s application of law, including the probate code, de novo. In re Parental Responsibilities of M.B.-M., 252 P.3d 506, 509 (Colo. App. 2011) (“Because this appeal turns on the interpretation of the Colorado Rules for Magistrates and the Colorado Rules of Civil Procedure and their application to orders entered by the magistrate and the district court, our review is de novo.”); In re Estate of Reed, 201 P.3d 1264, 1267 (Colo. App. 2008). ¶ 13 Statutory interpretation is also a question of law that we review de novo. City of Aurora v. Scott, 2017 COA 24, ¶ 14. Our task when construing a statute is to ascertain and give effect to the General Assembly’s intent. Id. In doing so, we construe a statute as a whole, giving consistent and sensible effect to all its parts. Id. In probate cases, we must construe the statutory provisions “liberally to promote a speedy and efficient system for settling a 
 6 decedent’s estate, and making distribution to his or her successors, while promoting uniformity in the administration of estates among different jurisdictions.” Oldham v. Pedrie, 2015 COA 95, ¶ 10. ¶ 14 In reviewing the existence of a common law marriage, because such determinations turn on “issues of fact and credibility,” we review a magistrate’s factual findings for clear error and his common law marriage determination for an abuse of discretion. In re Estate of Yudkin, ¶ 16. A magistrate abuses his discretion when his ruling is manifestly arbitrary, unreasonable, or unfair, or if it is based on an erroneous view of the law. People v. Elmarr, 2015 CO 53, ¶ 20. ¶ 15 If the district court abused its discretion, we review for harmless error. See C.R.C.P. 61 (“[N]o error or defect in any ruling or order . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the 
 7 parties.”). Under C.R.C.P. 61 harmless error review, we disregard errors or defects in the proceeding that do not affect the parties’ substantial rights. See In re Estate of Fritzler, 2017 COA 4, ¶ 7. “A party’s substantial right is one that relates to the subject matter and not to a matter of procedure or form.” Union Ins. Co. v. Hottenstein, 83 P.3d 1196, 1199 (Colo. App. 2003). In other words, an error affects a substantial right only if “it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.” Stockdale v. Ellsworth, 2017 CO 109, ¶ 32 (citation omitted). III. Jurisdiction ¶ 16 Gladys first contends that the magistrate’s August 1 order is void because, under C.R.M. (7)(a)(1), only the district court could properly review the magistrate’s April 21 order. Because the district court’s review was pending, she argues that the magistrate lacked jurisdiction to review his April 21 order. ¶ 17 We agree that a magistrate cannot entertain a motion for reconsideration and cannot alter his factual findings other than to correct clerical errors. See C.R.M. 5(a) (“Except for correction of 
 8 clerical errors pursuant to C.R.C.P. 60(a), a magistrate has no authority to consider a petition for rehearing.”); In re M.B.-M., 252 P.3d at 510 (“A magistrate may not entertain a motion for reconsideration under C.R.C.P. 59 or for relief from a judgment under C.R.C.P. 60.”). However, the magistrate’s August 1 order — titled “Order to Set Hearing on Common Law Issues” — did not modify his earlier April 21 order, but rather merely notified the parties that he would proceed to address whether Gladys was Decedent’s common law wife. See Scott v. Scott, 136 P.3d 892, 896 (Colo. 2006) (“The probate court is in a better position than the appellate court to evaluate the status of a proceeding and to determine whether a claim is ripe for review[.]”). Indeed, the August 1 order was consistent with the April 21 order terminating Gladys’ informal PR appointment and dismissing her informal intestacy case. The April 21 order stated that “all matters regarding the estate of Roosevelt Turnbough shall be addressed in this case.” ¶ 18 Further, it is unclear whether Gladys properly sought review of the magistrate’s April 21 order in district court. Compare C.R.M. 6(e)(1)(A) (no consent is necessary when a probate magistrate 
 9 performs duties pursuant to C.R.P.P. 4), with C.R.M. 6(e)(2)(A) (consent is necessary in probate cases ruling upon “all matters filed pursuant to C.R.S. Title 15”).
3 If the magistrate’s April 21 order did not require consent, then Gladys properly sought review of the order in district court. See C.R.M. 7(a)(1). But, if the April 21 order required consent, then Gladys should have appealed the magistrate’s April 21 order to our court. See C.R.M. 7(b). ¶ 19 However, we need not decide whether the magistrate’s April 21 order required consent, and thus whether review by the district court was proper, because the magistrate’s April 21 order was not final. See C.R.M. 7(a)(3) (“Only a final order or judgment of a magistrate is reviewable under this Rule. A final order or judgment is that which fully resolves an issue or claim.”); see also Scott, 136 P.3d at 896 (“[T]he same rules of finality apply in probate cases as 3 Because the magistrate’s April 21, 2017, order was issued following Jahlanece’s petition for formal PR appointment, it was governed by section 15-12-414, C.R.S. 2021 (formal proceedings concerning appointment of personal representative). The magistrate’s April 21 order also granted Jahlanece’s proposed order, which listed Decedent’s heirs. See C.R.P.P. 4(a)(12) (recognizing that a court may delegate the authority to its clerk “to determine heirship”). 
 10 in other civil cases; thus, an order of the probate court is final if it ends the particular action in which it is entered and leaves nothing further for the court pronouncing it to do in order to completely determine the rights of the parties as to that proceeding.”); In re Marriage of Roosa, 89 P.3d 524, 529 (Colo. App. 2004) (concluding that district court review under C.R.M. 7(a) is only proper “when the magistrate issues a final order,” where finality requires that “a magistrate’s order must fully resolve the issues”). ¶ 20 While the April 21 order dismissed Gladys’ informal intestacy case and formally appointed Jahlanece as PR, it left unresolved whether Gladys was Decedent’s common law wife. See In re Custody of Nugent, 955 P.2d 584, 588 (Colo. App. 1997) (“Since the existence of a marriage is in dispute, the court must resolve that issue after a hearing.”). Whether Gladys or Decedent’s daughter had priority of appointment was likewise unresolved. See § 15-12-
203, C.R.S. 2021. Accordingly, the magistrate’s April 21 order was not final. See Scott, 136 P.3d at 897 (recognizing that, while an “initial petition outlines a set of claims and begins a proceeding,” 
 11 subsequent pleadings that “relate to that set of claims are part of the same proceeding”). ¶ 21 Because (1) the magistrate’s April 21 order was not final and (2) the magistrate’s August 1 order merely held that he would hold a hearing on the common law marriage issue, any claimed error was harmless. See C.R.C.P. 61. The magistrate properly held a hearing on the common law marriage issue, and Gladys was able to present evidence that she was Decedent’s common law wife. Thus, we cannot conclude that any error in the magistrate’s August 1 order affected Gladys’ substantial rights. See In re Estate of Fritzler, ¶ 7; Hottenstein, 83 P.3d at 1199. ¶ 22 For similar reasons, we also reject Gladys’ contention that the district court’s August 25, 2017, order — adopting the magistrate’s April 21 order — is void because the court lacked jurisdiction. Gladys argues on appeal that the district court’s order is void because the court stated that the magistrate’s April 21 order “is not a final order.” We agree that the magistrate’s April 21 order was not final. Thus, the district court’s August 25 order was also non-final. See C.R.M. 7(a)(3). 
 12 ¶ 23 Further, the district court’s August 25 order also did not rule on the common law marriage issue. Rather, it merely acknowledged that the court could not review the issue because the magistrate had “made no findings resolving any claims,” noting that the “central unresolved question at this time is whether a common law marriage existed between [Gladys] and Decedent.” Accordingly, any asserted error by the district court was harmless. See C.R.C.P. 61; In re Estate of Fritzler, ¶ 7; Hottenstein, 83 P.3d at 1199. IV. The Magistrate’s April 21 Order ¶ 24 Gladys next contends that, before the district court terminated her informal PR appointment and formally appointed Jahlanece as PR, it was first required to set a hearing and give her at least fourteen days’ notice. See § 15-12-611(1), C.R.S. 2021 (“Removal proceedings shall be governed by the provisions of section 15-10-
503.”). She relies on section 15-10-503(1), C.R.S. 2021, which states that if a court “restrains, restricts, or suspends the powers of a fiduciary, the court shall set a hearing and direct that notice be given pursuant to section 15-10-505[, C.R.S. 2021].” Gladys also contends that the magistrate was aware that Jahlanece’s 
 13 appointment was opposed; thus, she claims that the magistrate erred by appointing Jahlanece as PR following a non-appearance hearing. Instead, Gladys asserts that because it was a contested matter, the magistrate should have provided her with notice of a hearing pursuant to section 15-10-401(1), C.R.S. 2021 (“If notice of a hearing on any petition is required, and except for specific notice requirements as otherwise provided, the petitioner shall cause notice of the time and place of hearing on any petition to be given to any interested person[.]”). We disagree. ¶ 25 If Gladys claims that she had insufficient notice of the non-
appearance hearing, the record refutes that claim. Further, because she disputes notice of the non-appearance hearing for the first time of appeal, we will not address it. See McGihon, ¶ 10. ¶ 26 Gladys also takes issue with the non-appearance hearing because she was not present, but she failed to object to Jahlanece’s formal petition for PR appointment. See C.R.P.P. 24(c)(2) (“Any interested person wishing to object to the requested action set forth in the court filing attached to the notice must file a specific written objection with the court at or before the hearing[.]”). Nor was the 
 14 fact that she was pro se at the time of the non-appearance hearing sufficient reason to excuse her from C.R.P.P. 24’s requirements. See Adams v. Sagee, 2017 COA 133, ¶ 10 (“[A]lthough courts should liberally construe pro se parties’ pleadings, pro se parties must comply with procedural rules to the same extent as parties represented by attorneys.”); Pullen v. Walker, 228 P.3d 158, 161 (Colo. App. 2008) (“The fact plaintiff is proceeding pro se and therefore may not fully comprehend her legal obligations does not relieve her of the responsibility of complying with them, or of the consequences if she fails to do so.”). ¶ 27 Lastly, we reject Gladys’ argument that the magistrate should have held a separate hearing in her informal proceeding in addition to the non-appearance hearing held in Jahlanece’s formal appointment matter. Gladys failed to object to Jahlanece’s petition, and without an objection, we are aware of no Colorado law supporting Gladys’ proposition that the court erred by holding a non-appearance hearing rather than following the procedures for a contested probate matter. See C.R.P.P. 24(c)(3) (“If no objection is filed, the court may take action on the matter without further notice 
 15 or hearing.”); see also In re Estate of Decker, 194 Colo. 143, 145, 570 P.2d 832, 834 (1977) (“Where there is no hint of objection to the probate of a will, the probate court is not obliged to invite objections at such a hearing.”). ¶ 28 The magistrate properly held a non-appearance hearing, of which Gladys had notice, as directed by statute. Section 15-12-
414, C.R.S. 2021, requires the court to “determine who is entitled to appointment under section 15-12-203, make a proper appointment, and, if appropriate, terminate any prior appointment found to have been improper as provided in cases of removal under section 15-12-
611.” And section 15-12-611(1) gives a court “the power to remove a personal representative for cause at any time,” consistent with the provisions of section 15-10-503. ¶ 29 Gladys relies on section 15-10-503(1), governing emergency fiduciary oversight, in arguing that the magistrate failed to give her proper notice. However, section 15-10-503(1) is inapplicable here because Jahlanece’s petition for PR appointment did not allege that Gladys had breached her fiduciary duties to the estate. See Black v. Black, 2018 COA 7, ¶ 23 (“Pursuant to section 15-10-503, C.R.S. 
 16 2017, the probate court has authority, either by petition or on its own motion, to address alleged misconduct of a fiduciary.”). Rather, Jahlanece sought PR appointment as an heir; thus, section 15-10-503(3), concerning the procedures for “removal of a fiduciary,” was the applicable provision. This is made clear by section 15-12-611(1), which directs us to section 15-10-503 for “removal proceedings.” See Oldham, ¶¶ 9-10. ¶ 30 Nothing in the record suggests that the magistrate failed to follow section 15-10-503(3)’s procedures, which provide that a court “may remove a fiduciary for cause at any time,” where cause for removal exists when it “would be in the best interests of the estate,” or it “is shown that the fiduciary . . . intentionally misrepresented material facts in the proceedings leading to the fiduciary’s appointment.” Given that Gladys (1) did not list Decedent’s children or grandchildren — despite acknowledging that she was aware of them — within her informal PR petition and (2) did not object to Jahlanece’s formal appointment petition, we cannot conclude that the magistrate’s April 21 order terminating Gladys’ 
 17 informal appointment and formally appointing Decedent’s daughter violated section 15-12-414 or its related provisions. ¶ 31 Finally, even if the non-appearance hearing and the magistrate’s April 21 order were in error, because the magistrate held a hearing on the common law marriage issue — allowing Gladys to present evidence — we cannot say “with fair assurance” that the outcome would have been different. See Laura A. Newman, LLC v. Roberts, 2016 CO 9, ¶ 24. Thus, any asserted error was harmless. V. Common Law Marriage ¶ 32 “[A] common law marriage may be established by the mutual consent or agreement of the couple to enter the legal and social institution of marriage, followed by conduct manifesting that mutual agreement.” Hogsett, ¶ 3. In the absence of evidence of an express agreement, evidence of the parties’ mutual agreement or consent to enter a marital relationship may be inferred from their conduct. Id. Whether a common law marriage exists depends on the totality of the circumstances, and no one factor is dispositive. Yudkin, ¶ 3. 
 18 ¶ 33 Relying heavily on a notarized affidavit of common law marriage that Decedent and Gladys executed, Gladys contends that the magistrate abused his discretion by finding that no common law marriage existed. She asserts that the magistrate misapplied the law by concluding that Gladys and Decedent could only be married by applying for a marriage license, and she argues that the magistrate relied on irrelevant facts, such as (1) Gladys and Decedent did not have sexual relations; (2) they never had a wedding ceremony; and (3) they failed to present the common law marriage affidavit to others and waited to record it until eighteen months after it was signed. We do not read the magistrate’s order this way. While the magistrate considered whether there was a marriage license, that factor was in no way dispositive and certainly lacks relevance post-Hogsett. But as we detail below, there are ample findings of fact in the record to support the conclusion that a common law marriage was not proved. Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist., 271 P.3d 587, 589 (Colo. App. 2011) (appellate court may affirm a trial court’s ruling on any grounds that are supported by the record); see also Board of Cnty. 
 19 Comm’rs v. Collard, 827 P.2d 546 (Colo. 1992) (deciding that a collateral attack on a water decree was barred by the statute of limitations where the limitations issue was raised below but was not decided by the trial court). ¶ 34 Having considered the Hogsett trilogy, we apply the law to the facts the magistrate found to conclude that the magistrate appropriately considered the couple’s behavior to determine whether they had (1) a mutual agreement to be married and (2) a reputation in the community as husband and wife. See Hogsett, ¶ 49 (recognizing that a common law marriage may be established by “mutual consent or agreement of the couple to enter the legal and social institution of marriage, followed by conduct manifesting that mutual agreement”). While it was undisputed that Gladys and Decedent cohabitated, the essential mutual consent or agreement to be married, followed by “conduct manifesting that mutual agreement,” was hotly disputed. Id. The magistrate properly looked to a variety of factors to determine whether such a mutual agreement was shown. See id. (recognizing that “the manifestation of the parties’ agreement to marry need not take a particular form”). 
 20 ¶ 35 Specifically, the magistrate found that the weight of the common law marriage affidavit was “severely diminished” because there was no marriage license application, no wedding ceremony, and no joint banking or credit accounts, and the couple’s 2015 tax return was the first they filed jointly as married. Further, while the affidavit listed December 25, 1997, as the effective date of the common law marriage, the magistrate noted that Decedent was unable to be married until the March 27, 2010, death of his former wife. See Combs v. Tibbitts, 148 P.3d 430, 434 (Colo. App. 2006) (“[N]o valid common law marriage arises where one party has [an] undissolved existing marriage[.]” (citing People v. Maes, 43 Colo. App. 365, 368, 609 P.2d 1105, 1108 (1979))). ¶ 36 Nor did the magistrate conclude that the couple’s lack of sexual relations meant they did not cohabitate, as Gladys suggests on appeal. See In re Estate of Little, 2018 COA 169, ¶ 19 (“Cohabitation in this context means ‘holding forth to the world by the manner of daily life, by conduct, demeanor, and habits, that the man and woman have agreed to take each other in marriage and to stand in the mutual relation of husband and wife.’”) (citation 
 21 omitted). Rather, the magistrate merely noted that the couple never had sexual relations, which was only one factor of many that he considered. See Hogsett, ¶ 55 (recognizing that “cohabitation, reputation in the community as spouses, maintenance of joint banking and credit accounts, purchase and joint ownership of property, filing of joint tax returns, and the use of one spouse’s surname by the other or by children raised by the parties may still be considered as evidence manifesting the couple’s intent to be married”). ¶ 37 The magistrate also found persuasive Decedent’s “consistent[] and public[]” denial of “any marriage,” evidenced by the fact that he identified himself as a widower and Gladys as “an other” or “a roommate” in his medical and business records. Id. at ¶ 56 (noting that a court should consider “evidence of shared financial responsibility, . . . emergency contact designations[,] . . . symbols of commitment, . . . and the couple’s references to or labels for one another”). ¶ 38 Finally, while Gladys presented testimony from her friends and relatives that she and Decedent held themselves out as a married 
 22 couple, the magistrate found that Jahlanece’s witnesses “were more credible” than Gladys’ witnesses, and we may not second-guess that credibility determination. See In re Estate of Little, ¶ 17 (“We defer to the court’s credibility determinations,” and “[w]hen the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result.”) (citations omitted); see also In re Marriage of Farr, 228 P.3d 267, 270 (Colo. App. 2010) (holding that it is the trial court’s province to determine the credibility of witness testimony). We cannot conclude that the magistrate clearly erred by finding Jahlanece’s witnesses more credible than Gladys’ witnesses, nor can we conclude that the magistrate abused his discretion by ruling that no common law marriage existed based on the record before us. See In re Estate of Yudkin, ¶ 16 (recognizing that the determination of whether a common law marriage exists “turns on issues of fact and credibility, which are properly within the trial court’s discretion” (quoting Lucero, 747 P.2d at 665)). 
 23 VI. Conclusion ¶ 39 The magistrate’s July 27, 2018, order finding no common law marriage is affirmed. JUDGE BERGER and JUDGE LIPINSKY concur.